## EBY *v.* EBY.

</div>

A testator devised to his daughter E., *inter alia*, as follows: "I give and devise to her certain hundred acres, with the allowance, situate, &c., *to have and to hold the same to her, her heirs and assigns for ever, but if she should die without lawful issue*, then said lands shall be divided among my other heirs, share alike. The said land she shall have for the sum of £450, money aforesaid; and after her proportionable share is deducted from said sum, of the residue she shall pay to my other heirs yearly the sum of £15, to begin with the first payment after a year after my death is expired," &c. He then empowered his executors to grant her "*lawful deeds for the said premises,*" at any time when she shall have paid the aforesaid sum, or shall have given security for the same;" but ordered that "she shall have no liberty to sell said premises before fifteen years after his death." He then directed "that the said £450 shall be divided, share alike, among his three daughters, E., A., and M., every year £15, as aforesaid;" and that "the residue of his estate, not here disposed of, shall be divided among *all* his heirs, share alike, on his daughter M., and also A.," in a certain event. *Held*, that E. took an estate in fee, with remainder over, by way of executory devise; but as she died, leaving children, and therefore the event upon which her estate was to be defeated did not happen, it became a fee-simple absolute, which descended upon her children.

In error from the Court of Common Pleas of Lancaster county.

*Nov.* 30. This was an action brought by Jacob Eby, the defendant in error, against Daniel Eby, the plaintiff in error, who was defendant below, to recover the sum of $1470 90, upon a covenant between the parties, and another brother named Abraham, in which they described themselves as "*children and heirs of Jacob and Elizabeth Eby.*" This covenant was dated the 17th of June, 1837, and bound the parties to stand to an appraisement to be made by

men therein named, of the lands late of the said Jacob and Elizabeth Eby, *divided in the same manner as the same were then occupied by the parties respectively,*" and that each would pay his respective part thereof.    It appeared that the parties to the covenant were in possession under a division made in 1826, and that Daniel, the defendant below, had built a mill on the premises.    The appraisement was made, and the objection of the defendant to the payment of the sum required from him to equalize the partition, rested upon the ground that the mother, Elizabeth Eby, formerly Elizabeth Habecker, and one of the children and devisees of Jacob Habecker, deceased, instead of being seised in fee-simple, held only an estate-tail in the land devised to her in the will of her said father; and that the whole estate in the said land so devised to her, descended, upon her death, to her eldest son, Abraham, as heir in tail, to the exclusion of her other children.    It also appeared, that on a doubt suggested as to the nature of the estate, Abraham, the claimant as tenant in tail, after having consented to and carried into effect the legal proceedings for the purpose of barring the entail, *at the equal expense and for the equal benefit of all the parties,* refused to convey the purpart of the land which had been in the possession of Daniel, under the amicable partition made in 1826, of the original tract devised, and consequently Daniel took no interest in the premises.    The clauses in the will of Jacob Habecker, which gave rise to this controversy, are so fully stated in the opinion of this court, that it is unnecessary to insert them here.

The court below (LEWIS, P. J.) charged the jury, that the defendant took a fee-simple under the will, and if he did not, that the plaintiff, under the evidence, was entitled to recover. · To this charge the defendant excepted, and, upon the jury returning a verdict for the amount claimed by the plaintiff, sued out this writ.    The only question here was, whether the estate given to Elizabeth, in the one hundred acres of land, in and by the will of her father, Jacob Habecker, was a fee-simple, or an estate-tail.

*Stevens,* for plaintiff in error, cited 2 Powell on Devises, 518, 526, 22 Law Lib.; 2 Yeates, 400; 9 Watts, 447; 12 Wend. 83; 7 Watts & Serg. 63; 9 Mass. 161.

*Fordney* and *Frazer,* contrà, cited 1 Pow. on Dev. 28, n. 1; 2 Binn. 464; 9 Serg. & Rawle, 445; 9 Watts, 450; 6 Watts, 171; 7 Watts & Serg. 98.

*Dec.* 7.    BELL, J.—As it appears by this record, the only de-

fence set up and finally insisted on by the defendant below, the plaintiff in error, against the right of the plaintiff below to recover in this action, was based upon a supposed failure of the consideration which induced the covenant of the 17th of June, 1837, and the valuation and appraisement consequent upon it. This supposed failure of consideration proceeds altogether upon the position assumed by the plaintiff in error, that, under the last will of his grandfather, Jacob Habecker, his mother, Elizabeth, afterwards Elizabeth Eby, took but an estate-tail in the land devised to her, which, upon her death, descended upon and vested in her eldest son, Abraham, as heir in tail, to the exclusion of her other children, and consequently, as Abraham, after docking the entail, refused to convey the purpart of the land which had heretofore been in the possession of Daniel, in pursuance of an amicable partition of the original tract devised, the latter took no interest in the premises. If this position be incorrect, it must be conceded the plaintiff below is entitled to recover in this action the sum claimed by him to equalize the value of the purparts assigned to him as one of the three sons of Elizabeth Eby, during the lifetime of his father, as that sum is ascertained in pursuance of the covenant upon which the action is founded.

The question then that presents itself for solution is, what estate did Elizabeth Eby take in the land devised to her by the last will of her father?

Upon the authority of Eichelberger *v.* Barnitz, 9 Watts, 447, and Langley *v.* Heald, 7 Watts & Serg. 96, cases which must be accepted as settling the law, in this particular, in Pennsylvania, and which, therefore, save us the necessity of any review of the numerous earlier decisions, the question I have stated resolves itself into another, namely, did the testator, when limiting the estate over, contemplate an indefinite failure of the issue of the first taker? or did he mean that the contingency upon which the devise over is made to depend, was to happen, if at all, within a fixed and definite period? If the former was the intention, the daughter Elizabeth took an estate-tail, and the defence set up here is available; but if the latter intent can reasonably be collected from the whole of the will, and the time fixed be not too remote, she took an estate in fee-simple, liable, on the one hand, to be defeated upon the contingency of her dying without issue within the prescribed period, in which case the limitation over would take effect by way of executory devise, and on the other, capable of being perfected and rendered absolute by her leaving issue within the time of the contingency.

The clauses which give rise to the controversy are the following:
"Item, I give and devise to her (Elizabeth) certain hundred acres,
with the allowances, situate, &c., to have and to hold the same to
her, her heirs and assigns for ever, but if she should die without law-
ful issue, then said lands shall be divided among my other heirs,
share alike; the said land she shall have for the sum of £450
money aforesaid; and after her proportionable share is deducted
from the said sum, of the residue she shall pay *to my other heirs*
yearly, the sum of £15, to begin with the first payment after a year
after my death is expired, &c. Item, I hereby empower my execu-
tors to grant her lawful deeds for said premises at any time when
she shall have paid the aforesaid sum, or shall have given security
for the same; but she shall have no liberty to sell said premises
before fifteen years after my death are expired." In a subsequent
part of the will, the following disposition is made of the £450 to
be paid by Elizabeth: "Item, I will and ordain that the said £450
shall be divided, share alike, among my three daughters, Elizabeth,
Anna, and Maria; every year £15, as aforesaid; the residue of
my estate, not here disposed of, I will and ordain that the same
shall be divided among all my heirs, share alike, only my daughter
Magdalena, and also Anna, if she should join with the Lutherans,
excepted as aforesaid."

That this will was made, *inops concilii*, is apparent upon its
face, and a very brief examination of the clauses just quoted is
sufficient to satisfy the inquirer that the testator used the sentence,
"if she should die without lawful issue," according to its popular
signification, and without reference to the somewhat artificial and
technical meaning assigned to it by judicial determinations. This
being ascertained with sufficient certainty, will bring the case
within that class which present exceptions to the rule that a de-
vise to one in fee, followed by the above or similar words of quali-
fication, and a devise over, reduces, by implication, the interest
given to an estate-tail in the first taker.

In scanning the clauses in question, the first truth that pre-
sents itself is that the word "heirs" in the clause devising the estate
over, on failure of Elizabeth's issue, is used as synonymous with
the word *children*, and as being inclusive only of the testator's
children. Then, in the sentence next succeeding, the sum to be
paid by Elizabeth is to be distributed by yearly instalments of £15,
among "my other heirs;" and those heirs are subsequently pointed
out to be the testator's three daughters, Elizabeth, Anna, and Maria.
So, the £800 to be raised out of the land devised to Jacob, is

to be "divided among my heirs, as hereafter shall be said," and these "heirs" are afterwards said to be, "my son Jacob, and my daughters Anna and Maria." So, too, the residue of the testator's estate is to be disposed of by dividing it among all his "heirs, share alike," excepting "only his *daughter Magdalena, and also Anna,*" in a certain event, thus indicating unerringly, that whenever the testator speaks of his own immediate heirs, he means, as do most illiterate men by the use of the same word in a will, his children, and not the more remote descendants, or other relatives, who might technically be embraced by the term. If this be the true reading, as I think unquestionably it is, of the clause devising over the land before devised to Elizabeth, it may afford us at least some clue to guide us to the conclusion that the testator, in his own mind, referred the possible failure of issue to a time to be comprehended within certain lives, then in existence, and not to some indefinitely future period. I give to my daughter Elizabeth, and to her heirs and assigns for ever, but if she should die without issue, then the lands devised to her shall be divided among my other *children,* share alike, would seem strongly, if not irresistibly, to point to a definite failure of issue, namely, in the lifetime of the other children. Indeed, in the case of Eichelberger *v.* Barnitz, reported in 17 Serg. & Rawle, 293, where the same question was presented, the use of the word "children," in the same connection, was held to carry a controlling influence in determining the intent. There the clause giving rise to the question was, "And it is further my will, that if my grandson Abraham should die without issue, the part as willed to him is to fall to my heirs back to be divided amongst *my children,* as in my will mentioned, share and share alike." Here, says C. J. Gibson, who delivered the opinion of the court, the contingency was to happen in the lifetime of the children, which is not too remote, even in the case of real estate. And in a preceding portion of the opinion he speaks of the devise over amongst the *children* as "a circumstance which proves incontestably that such a contingency was meant as would necessarily happen within a life or lives in being." This, I think, would be decisive of the present case, were it not for a subsequent judgment of this court in a case already cited, and also called Eichelberger *v.* Barnitz, though between different parties, and springing from a different will; 9 Watts, 447. There the word "children" is used in the same connection, and for the same purpose, as in the first case, and yet it was determined the first taker had but an estate-tail, on the ground that there was nothing in the will to show the testator con-

templated other than an indefinite failure of issue. Mr. Justice Sergeant, who delivered the opinion, takes no notice of the use of the word " children," as being of any effect in determining the construction, nor does he refer at all to the former case of the same name, though it appears to have been cited by the counsel for the plaintiff in error.

With the authority of adjudged cases thus balanced, we should be left in much uncertainty, did the will we are considering stop here. But fortunately there are other portions of the particular devise, so clearly manifesting, in my opinion, an intention to confine the happening of the contingency within a definite and ascertained period, that the mind feels no hesitancy in adopting it as the clear meaning of the testator, particularly when these portions are read in connection with the clause I have already considered.

The parts to which I refer are those which direct the daughter, Elizabeth, to pay a certain sum by way of payment for the land devised to her, and the following " Item : I hereby empower my executors to grant her (Elizabeth) lawful deeds for said premises at any time when she shall have paid aforesaid sum, or shall have given sufficient security for the same, but she shall have no liberty to sell said premises before fifteen years after my death are expired." Now I think it is impossible to believe this testator intended that, after his daughter had paid, or secured to be paid, the full sum fixed by him as the price of the devise, his executors, in pursuance of his direction, should make to her a deed for any estate less than a fee-simple, or that at the end of fifteen years, and after payment of the money, she should be at liberty to sell but a fee-tail, which, unbarred by deed, or common recovery, would be but equivalent to the sale of an interest during her life, and it is not to be supposed, if the testator intended to give his daughter only the lesser estate, he anticipated the destruction of that estate by the action of the devisee, or a purchaser under her. What would an unlearned man mean by the words " lawful deeds for said premises ?" Surely nothing less than a conveyance in fee-simple. In our rural districts, and among laymen, the term " lawful deeds" carries no other idea than an unrestricted conveyance in fee, clear of encumbrances. What would such a man mean by the creation of an express power to sell, or the removal of a previous restraint imposed on alienation, after the payment of a sum in gross by the devisee, other than a right to alien the whole interest in the land ? Surely nothing less. Whether, therefore, in this case, we refer the possibility of the failure of issue of the first taker, upon which event

the estate was to go over, as a contingency to happen in the life-time of the other children, to the thirty years given for the pay-ment of the £450, or to the period of fifteen years, within which it might be paid, and to one or other of these periods it must be re-ferred, a case is presented of a limitation over upon a definite failure of issue, after a devise in fee, and the contingency being within the time allowed to support an executory devise, it follows that Elizabeth Eby took, under this will, an estate in fee, with a remainder over by way of executory devise; but as she died leav-ing children, and, therefore, the event did not happen upon which her estate was to be defeated, it became a fee-simple absolute, which descended upon her children. It follows that the defendant below, the plaintiff here, had such an interest in the land which he took by virtue of the amicable partition already noticed, as will furnish a consideration sufficient to support the covenant upon which the action is founded.

This view disposes of the whole case in favour of the plaintiff below, and renders unnecessary a review of the position secondly assumed by the judge below, or any notice of the bill of exception to evidence, which, indeed, was not pressed on the argument.

<div align="right">Judgment affirmed.</div>