## Middleswarth's Adm'r. *versus* Blackmore *et al.*

1. A devise was to " my son Jonathan * * * out of which I direct him to pay to my wife the above $500 in 10 annual instalments," and after several bequests to his daughters testator directed " if there should not be funds enough to pay said pecuniary legacies Jonathan is directed to pay the same at $25 per annum unto each till the deficiency is made up ; * * * in case Jonathan should die without leaving any legitimate issue it is my will the real estate bequeathed to him shall be sold and after the payment of all the specified sums," then of the balance $1500 were to be paid to two benevolent societies, and the balance to all testator's " legitimate grandchildren, now or hereafter born ; " but if any should be guilty of offences, which were specified, they were to be debarred from any bequest under his will and their share to " be equally divided amongst their brothers and sisters whose life and conversation is free from reproach." *Held*, that Jonathan took a defeasible estate which terminated at his death without issue.

2. The intention of a testator is not to be ascertained by considering the language of the devise only ; the construction must be that which is consistent with the whole scheme of the will.

3. " Die without leaving legitimate issue" standing alone in a will means issue indefinitely.

4. A devise may be restrained by subsequent expressions and a fee simple thus be converted into an inferior estate.

[Middlesworth's Adm'r. v. Blackmore.]

5. " Issue " in a will primâ facie means heirs of the body :—but this will be different, if on the face of the will there be sufficient to show that the word was to have a less extended meaning.

6. The devise over is to be considered in determining whether the estate should vest on the death of the first taker. '

November 13th 1873.   Before READ, C. J., AGNEW, SHARS-WOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Allegheny county :* No. 88, to October and November Term 1873.

This was an action of ejectment for a tract of two hundred acres of land, commenced May 4th 1871, by John Hickman, administrator d. b. n. c. t. a. of Moses Middleswarth, deceased, against James Blackmore.   The land in controversy belonged to Moses Middles-warth, the decedent, who died seised of it about July 1842, having made a will dated January 14th 1841, and proved July 23d 1842. Letters testamentary were issued to the executors named in the will; they having died, administration d. b. n. c. t. a. was granted to the plaintiff.

The testator left to survive him his wife, Elizabeth Middles-warth ; seven children, viz., Jonathan, Mary, Sabia, Euphemia, Anne, Betsy and Hannah.   All the daughters were married, and had children at the date of the will.   He also left a grandchild, the daughter of a son who had died before the date of the will, this daughter being then born.   Jonathan was about forty-two years old at the date of the will, and was unmarried.

The land in dispute was devised to Jonathan Middleswarth in the terms mentioned in the will, which will be given hereafter.   On the assumption that his devise was an estate tail he executed an appropriate deed to bar it, and the land having been reconveyed to him on the 7th of July 1853, he conveyed it by deed in fee simple to Thomas Blackmore, under whom the defendant claimed.

Jonathan died June 8th 1869, without issue, never having been married.

. By the words of the will the executors were directed to sell the land on Jonathan's death without issue; the plaintiff alleging that Jonathan's estate was defeated by his death without issue, brought this ejectment.

The will is as follows :—

" After the payment of all just debts and charges, I devise and bequeath unto my beloved wife Elizabeth, during the term of her widowhood, my house and farm whereon I now reside, &c., * * * and also $500 to be paid to her in the manner hereinafter mentioned.

" Second, I devise and bequeath unto my son, Jonathan Mid-dleswart, the Ramsey place or farm, &c. * * * out of which I direct him to pay to my beloved wife Elizabeth the above specified $500, to be paid in ten annual instalments of $50 each, and if not

*all* paid in her lifetime, she is to have the disposal of it to who or whom she shall think best. After the marriage or death of my wife Elizabeth I direct that the real estate devised to her during her widowhood, shall be disposed of as soon as circumstances will admit, and I further direct that the proceeds arising from the sale of this portion of my real estate shall be equally divided amongst the legitimate children of my son, Jessey Middleswart (now deceased), the legitimate children that is or may be born by my, daughter Zabia Henry, Mary Chess, Euphemia Coulter, Anne Fryer, Hannah Coulter and Elisabeth Middleswart to share and share alike.

"Third, I devise and bequeath unto each of my daughters, Zabia Henry, Mary Chess, Euphemia Coulter, Anne Fryer, Hanna Coulter, Elisabeth Middleswart, the sum of $2500, to be paid to them in one year after my decease. I devise and bequeath unto my daughter Elisabeth, in addition to the above bequest, the interest of $1000, to be paid to her from the first day of April 1834, until one year after my decease, &c. * * *

"I do hereby appoint and constitute Samuel Stewart, &c., executors of this my last will and testament, and I hereby authorize and empower my executors to sell, dispose and convert into cash all the balance of my estate, real, personal or mixed, whatsoever or wheresoever situate, and whether in possession or otherwise, and out of the proceeds of the same to pay the pecuniary legacies hereinbefore specified, and if there should be any surplus, I direct it to be divided equally among my said daughters, or their legal representatives; if there should not be funds enough to pay the said pecuniary legacies, my son Jonathan is directed to pay the same at the rate of $25 per annum to each of my daughters until the deficiency is made up. * * * And I further direct that in case my son Jonathan should die without leaving any legitimate issue, then it is my will that the real estate herein bequeathed to him shall be sold, and after the payment of all the specified sums hereinbefore mentioned (which is enjoined on him to pay), then it is my desire and will, that of the balance remaining, $1000 shall be paid by my executors (or the surviving ones of them), to the Foreign Missionary Society of the Presbyterian Church, and $500 to the General Assembly's Board of Education, as soon as convenient, and the balance remaining after this, I direct to be equally divided amongst all my legitimate grandchildren, that is now or may hereafter be born, to share and share alike. And now I wish it distinctly to be understood, that any of my grandchildren who shall be guilty of having an illegitimate child, or is guilty of the sin of intemperance, or that do wickedly and irreverently profane God's holy name, that he, she, or ,they do, by such conduct, for ever debar themselves from the benefit of any bequeath herein made by me to them, and the share or shares of such one or ones

shall be equally divided amongst the brothers and sisters of such one or ones whose life and conversation is free from reproach."

The case was tried May 16th 1872, before Sterrett, P. J., who upon the foregoing facts directed a verdict for the plaintiff, reserving the following question :—

"Whether, under the will of Moses Middleswarth—in connection with the proceedings had for the purpose of barring the entailment—Jonathan Middleswarth acquired a title in fee simple to the land in controversy ?"

The jury accordingly found for the plaintiff. The court afterwards entered judgment for the defendants, *non obstante veredicto*.

The plaintiff removed the record to the Supreme Court by writ of error, and assigned for error the entering judgment for the defendant.

*T. Ewing* and *R. M. Gibson* (with whom were *J. G. Bryant* and *H. W. Weir*), for plaintiff in error.—Courts will look at the circumstances under which the devisor makes his will, as the state of his property, of his family, and the like : 2 Jarman on Wills 742 ; 2 Powell on Devises 6. In a construction which harmonizes all the testator's dispositions and accomplishes all his intentions, is the true will of the testator : Earp's Will, 1 Parsons 457 ; Barclay *v.* Lewis, 17 P. F. Smith 320. The gifts over after Jonathan's death without issue, must take effect within a limited time, therefore the failure of issue contemplated must be definite : Barnfield *v.* Welton, 2 Bos. & Pul. 324 ; Porter *v.* Bradley, 3 T. R. 143 ; Pells *v.* Brown, Cro. Jac. 590 ; Eichelberger *v.* Barnitz, 9 Watts 450 ; Taylor *v.* Taylor, 13 P. F. Smith 485 ; Fahrney *v.* Holsinger, 15 Id. 392 ; Smith's Exec. Interests 559, 560 ; 2 Jarman on Wills 440, 441 ; Hauer *v.* Shitz, 3 Yeates 235 ; Johnson *v.* Currin, 10 Barr 498 ; Curran *v.* McMeen, 5 P. F. Smith 489 ; Hawkins on Wills 206, 209 ; McCullough *v.* Fenton, 15 P. F. Smith 418.

*G. P. Hamilton* and *R. Woods* (with whom was *S. Woods*), for defendants in error.—The first words of the devise give a fee simple-to Jonathan : Wills Act, April 8th 1833, sect. 11, Pamph. L. 388, 2 Br. Purd. 1475, pl. 10. But if they give him but a life estate the subsequent words make it an estate tail : James's Case, 1 Dallas 47 ; Evans *v.* Davis, 1 Yeates 332 ; Mills *v.* Beecher, 1 Wash. C. C. 369 ; Haines *v.* Witmer, 2 Yeates 400. The phrase "without leaving issue" does not prevent an estate tail from vesting, and a devise over is too remote: 4 Kent's Com. 277 ; Clark *v.* Baker, 3 S. & R. 478 ; Ogden's Appeal, 20 P. F. Smith 501. The provision here embraces an indefinite range of persons, and therefore the devise over is not restrained to a limited period : 2 Jarman on Wills 246, 449 ; Campbell *v.* Harding, 2 Russell &

24 P. F. SMITH—27

M. 390. If the interests of the grandchildren be vested so as to pass to their representatives, the general rule will not give way : 2 Jarman on Wills 450. These interests are vested : Price *v.* Watkins, 1 Dallas 8; Kerlin *v.* Bull, Id. 189. The legal as well as the actual intent was that Jonathan should take an estate of inheritance : 2 Jarman on Wills 178; Wills Act, sect. 11. Such intent will override technical rules : Redfield on Wills 433, 434. Devises by implication may be rebutted by contrary implications : 1 Jarman on Wills 464 and cases cited : Taylor *v.* Taylor, 13 P. F. Smith 481; Middleswarth *v.* Collins, 1 Phila. R. 139.

The opinion of the court was delivered, January 5th 1874, by

MERCUR, J.—It is an unquestioned rule that the intention of the testator shall govern in the construction of every devise, whenever that intention is clearly manifested, and is not inconsistent with the established principles of law. The intention, however, should not be ascertained by considering the language of the particular devise only, which is sought to be construed, but should be gathered from the whole instrument. The construction given should be such as is consistent with the whole scheme of the will. If a general intent, and a particular intent, are inconsistent with each other, the latter must yield to the former.

The question presented is, what estate had Jonathan Middleswarth, in the land in question, under the will of Moses Middleswarth? The court below held it to be an estate tail. The plaintiff contends it was a defeasible estate, terminable upon his dying without leaving legitimate issue living at the time of his death.

We will first seek to discover the intention of the testator. He left surviving him a widow, six married daughters, one grandchild, who was the child of a deceased son, and one son. The son, Jonathan, was about forty-two years of age and unmarried.

The testator devised to his wife, certain real estate "during the term of her widowhood," and directed that upon her marriage or death it should be disposed of, and the proceeds arising from the sale thereof, be equally divided among the legitimate children of his deceased son, and the legitimate children that were or might be born of his six several daughters, share and share alike. He also bequeathed to his wife five hundred dollars, to be paid to her in ten annual instalments of fifty dollars each, and provided that if it should not all be paid in her lifetime, she might dispose of the same to whom she thought best. He directed these $500 to be paid by his son, Jonathan, out of the land devised to him. He bequeathed to each of his six daughters $2500, to be paid in one year after his decease; to the Foreign Missionary Society, of the Presbyterian Church, $500, to be paid in ten annual instalments; and to two other persons, $100 each; to his son Jonathan he

devised the land in question. He authorized his executors to sell
and convert into cash all the residue of his estate, real, personal
or mixed, and out of the proceeds to pay the pecuniary legacies
specified. If the funds should be insufficient to pay the same,
Jonathan was directed to pay them, at the rate of twenty-five
dollars per annum to each daughter. He further directed, "that
in case my son Jonathan should die without leaving any issue,
then it is my will that the real estate herein bequeathed to him
shall be sold, and after the payment of all the specified sums
hereinbefore mentioned (which is enjoined upon him to pay), then
it is my desire and will that of the balance remaining, one thousand
dollars shall be paid by my executors (or the surviving ones of
them) to the Foreign Missionary Society of the Presbyterian
Church, and five hundred dollars to the General Assembly's Board
of Education, as soon as convenient, and the balance remaining
after this, I direct to be equally divided amongst all my legitimate
grandchildren, that is now or may hereafter be born, to share and
share alike."

As a general rule and standing alone, the language "die with-
out leaving any legitimate issue," must be understood to mean
issue indefinitely. That the estate created would, in such case,
have been one in tail, is recognised by numerous English and
American authorities. The principle is affirmed in Clark *v.* Baker
*et al.*, 3 S. & R. 470; Eichelberger *v.* Barnitz, 9 Watts 447;
Criley *v.* Chamberlain, 6 Casey 161; Taylor *v.* Taylor, 13 P. F.
Smith 481.

Does the whole will establish a different intention? It is well
settled that a testator may restrain the generality of a devise by
subsequent expressions, and convert that which otherwise would
have been a fee simple, into an inferior interest; and more fre-
quently in this mode than in any other is a particular estate given:
Haldeman *v.* Haldeman, 4 Wright 29. The word "issue" in a
will means primâ facie the same thing as "heirs of the body," and
in general is to be construed as a word of limitation; but this con-
struction will give way, if there be on the face of the instrument
sufficient to show that the words were to have a less extended
meaning, and to be applied to children only, or to descendants
of a particular class, or at a particular time: Taylor *v.* Taylor,
*supra.*

Did the testator, when limiting the estate over, contemplate an
indefinite failure of the issue of the first taker? Or did he mean
that the contingency upon which the devise-over is made to depend,
was to happen, if at all, at the time of the death of Jonathan? If
the former was the intention, Jonathan took an estate tail; but
if the latter intent can reasonably be collected from the whole
will, he took an estate in fee simple, liable to be defeated upon
the contingency of his dying without leaving issue at the time

designated : Eby *v.* Eby, 5 Barr 461; Jessup *v.* Smuck, 4 Harris 327.

The declaration that in case Jonathan died "without leaving any legitimate issue, then" the real estate devised to him should be sold by the testator's executors, and the proceeds be distributed by them, evidently points towards a definite failure of issue. It manifestly indicates that this failure will occur during the lifetime of some one of his executors named. .

The land in which his wife had a limited estate, after the termination of that estate, was to be sold by his executors, and the proceeds thereof be distributed among the testator's grandchildren. In like manner, upon the death of Jonathan without leaving legitimate issue, the land given to him was to be sold, and the proceeds be distributed by the testator's executors; the residuary portion thereof to be divided among his grandchildren. It is very clear that the testator had the same beneficiaries in his mind in each case. All the authorities concur in saying that the devise over should be considered in determining whether the estate should vest on the death of the first taker. In distributing the proceeds of the land in which his wife had a limited use, he gave the names of the several parents of his grandchildren who were to take; thus fixing beyond any question that the recipients should be no further removed from him. In the latter distribution he does not unnecessarily repeat the names of the parents of his grandchildren, but evidently had the same persons in view. This excludes the idea that the issue of Jonathan had reference to some remote period of the future. The intention to refer to a definite failure of issue is further shown by the fact that he had in his mind the contingency of Jonathan's dying before all the legacies given to the testator's daughters had become due, or had been paid out of the residuary estate devised for that purpose. Again, in for ever debarring from the benefit of any bequeath made " any of my grandchildren who shall be guilty of having an illegitimate child, or is guilty of the sin of intemperance, or that do wickedly and irreverently profane God's holy name," and in giving it to those of them " whose life and conversation is free from reproach," he manifestly had in his mind his immediate grandchildren, and excluded the idea of a more remote future, when the character and habits of his beneficiaries should be inquired into. This view is most fully sustained by Johnson *v.* Currin, 10 Barr 498. There the devise was to testator's daughter, her heirs and assigns, and " if any of my daughters die without heirs of their body, their part to be equally divided between the survivors of them, and my grandchildren. Held, an executory devise to the grandchildren and surviving daughters, and not a remainder which could be barred by the first taker. The cases of Lapsley *v.* Lapsley, 9 Barr 130, and Criley *v.* Chamberlain, *supra*, are urged as leading to a different conclusion.

[Middleswarth's Adm'r. v. Blackmore.]

Each of those cases was decided under its peculiar circumstances. Neither of them denies that if the whole will clearly indicates a different intention, full effect shall not be given to such intention. The rule is clearly stated in Smith on Executory Interests 505, ch. 13, rule 2 : "If there are any expressions clearly showing that by issue the testator meant children, or particular individuals among his descendants, or any expressions indicative of an intent absolutely inconsistent with or not included in any estate tail in the ancestor, then the word issue will be construed a word of purchase, if the issue may take as purchasers consistently with the rule against perpetuities ; and the ancestor will take an estate for life, with a contingent or vested remainder, as the case may be." The correctness of this rule is clearly recognised in Sheets's Estate, 2 P. F. Smith 257 ; Taylor v. Taylor, supra ; Fahrney v. Holsinger, 15 P. F. Smith 388 ; McCullough v. Fenton, Id. 418 ; Yarnall's Appeal, 20 Id. 335.

An examination of the whole will satisfies us that Jonathan took a defeasible estate, which terminated at his death. The learned judge, therefore, erred in entering judgment in favor of the defendants on the reserved question.

> Judgment reversed, and judgment entered in favor of the plaintiff on the question of law reserved.