# Martin et al., Appellants, *v.* Grinage.

*Wills—Construction—Estate in fee—Life estate—Remainders—Survivorship—"Heirs"—Death without heirs, issue or children—Transposing clauses of will—Act of April 27, 1835, P. L. 368.*

1. In construing a will the courts should as far as possible ascertain testator's intention as expressed by him rather than depend upon a purely technical construction;  but both may be

considered in searching for the real intent of testator, which, when discovered, must prevail; here the results of both coincide.

2. Where a testator devises a farm to his wife for life, gives legacies to several of his children, then devises the farm after the death of his wife to two named sons "and to their heirs" and if both sons should die "without heirs" then the proceeds of the land over to legatees mentioned, but if either son "should die without heirs" then to the survivor "and his heirs," and one of the two sons dies in the lifetime of testator intestate and without issue, and the survivor dies before his mother, held that a fee vested in the survivor upon the death of testator, by the intention appearing from the whole will and under the rule in Shelley's Case.

3. In such case, the children of the survivor cannot successfully claim that their father took only a life estate, and that, after the death·of testator's widow, they took as purchasers or devisees by implication.

4. A construction of a particular clause in the will which would in effect give a fee simple absolute to the grandchildren of testator, who at most are only mentioned as devisees by implication, and reduce the gift to his two favorite sons, or the survivor of them, to a life estate, will not be adopted in the face of a first expressed intent to give such sons a fee simple estate when another reasonable construction consistent with such dominant intent presents itself.

5. The word "heirs," when used in a will, cannot ordinarily be construed as "children" or as any other word of purchase, but must be read as a word of limitation.

6. Where persons named to take if the first devisees should die without heirs, are themselves among the ordinary heirs of such devisees, it will be held that the heirs intended by testator are heirs of the body and not heirs generally.

7. A gift over, on failure of heirs of the first takers, to named persons in being, indicates that, when making the devise, testator had in mind a definite rather than an indefinite failure of issue.

8. The clause in the present will which provides for the disposition of testator's property upon the death of both sons without issue is not to be read into and does not control the subsequent survivorship clause.

9. The fact that the first mentioned clause provides for the sale of the land and the division of the proceeds indicates that testator was providing in that particular clause only for what should happen after his own death.

10. When part of a testamentary clause manifestly provides only for what is to happen after testator's death, it must be assumed, in the absence of evidence to the contrary, that the whole

clause is to apply only at that time, and hence it cannot properly be construed as meaning to provide for the death of a devisee during the lifetime of testator, but this does not necessarily affect the construction of a subsequent clause containing no such internal evidence of intent.

11. In this case, held that the clause in question is to be subordinated to the survivorship clause following and that this can be done by so construing the will that the former clause, concerning the death of both sons, shall be put into effect only if both of them survive their father, and then die without issue; further, that the death of one of the sons in the lifetime of testator eliminated the applicability of the clause last mentioned, and removed it from the will, so far as its effect on other parts thereof is concerned.

12. Even if the clause in question were to be considered as still operative in the will, the same conclusion would be reached on a proper technical construction of the instrument.

13. Where a devisee is given only a life estate with a provision that, on his death at a definite time without children, or heirs, or issue, the property is to go to others, there is an implied remainder in any children, heirs or issue whom the life tenant may leave surviving him; but where, as in the present case, the will gives a fee in the first instance, followed by a devise over after a definite failure of children, heirs or issue, there is no implied gift whatsoever to any children, heirs or issue who survive the time fixed for the contingency to occur.

14. Under such circumstances, the estate in the first taker is a fee simple, subject to go over by executory devise, on the happening of the designated contingency; the mention of children, heirs or issue of the first taker, is merely part of the description of the contingency, and if it does not take place, the title of the first taker is absolute and indefeasible.

15. If an indefinitely failure of issue was contemplated, the first taker would have a fee tail, enlarged by the Act of 1855 into fee simple absolute and the gift over would be void under the rule against perpetuities.

16. At times the provisions in a will may be transposed to make clear the apparent meaning of the testator.

17. A provision in a will for survivorship as between devisees, is, as a general rule, referred to the happening of that event in the lifetime of the testator.

Submitted on paper books March 21, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER, and SCHAFFER, JJ.

Appeal, No. 57, March T., 1927, by plaintiffs, from judgment of C. P. Greene Co., Dec. T., 1924, No. 11, for defendant on case stated, in suit of James D. Martin et al. v. Oliver M. Grinage. Affirmed.

Case stated in ejectment. Before SAYERS, P. J.
The opinion of the Supreme Court states the facts.
Judgment for defendant. Plaintiffs appealed.

*Error assigned,* inter alia, was judgment, quoting record.

*Harry F. Moore* and *Lloyd E. Pollock,* for appellants. —John Marshall Martin took a life estate only: Loxley's Est., 3 W. N. C. 306; Yard's App., 5 W. N. C. 175; Nice's App., 50 Pa. 143; Criswell v. Grumbling, 107 Pa. 408; Jones v. Bower, 20 Pa. C. C. R. 95; Lewis v. Belt Co., 222 Pa. 139; Kern's Est., 5 Pa. Dist. R. 264; Parkhurst v. Harrower, 142 Pa. 432; Nes v. Ramsay, 155 Pa. 628; Shower's Est., 211 Pa. 297; Smith v. Piper, 231 Pa. 378; Braden v. Cannon, 24 Pa. 168; Guthrie's App., 27 Pa. 9; Chew's App., 37 Pa. 23; Keim's App., 125 Pa. 480; Bonaffen's Est., 14 W. N. C. 501.

*Challen W. Waychoff, Roy J. Waychoff* and *M. E. Carroll,* for appellee.—It is very clearly settled both in England and in this State that if a bequest be made to a person, absolutely in the first instance, and it is provided that, in the event of death or death without issue, another legatee or legatees shall be substituted to the share or legacy thus given, it shall be construed to mean death or death without issue before testator: Gailbraith v. Swisher, 19 Pa. Superior Ct. 143; Mickley's App., 92 Pa. 514; Fitzwater's App., 94 Pa. 141; King v. Frick, 135 Pa. 575.

The following cases are cited as bearing out the position that John Marshall Martin must in any view of the case have taken an estate in fee simple: Hackney v. Tracy, 137 Pa. 53; Taylor v. Taylor, 63 Pa. 481; Middleswarth v. Blackmore, 74 Pa. 414; Lapsley v. Lapsley, 9 Pa. 130; Vaughan v. Dickes, 20 Pa. 509; Matlack v. Roberts, 54 Pa. 148; Flick v. Oil Co., 188 Pa. 317;

Reimer v. Reimer, 192 Pa. 571; Stouch v. Zeigler, 196 Pa. 489; Steiner v. Kolb, 57 Pa. 123.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, May 9, 1927:

This is a case stated in which judgment was entered for defendant, and plaintiffs have appealed.

The broad question involved, and on which the decision of the court below turned, is, whether John Marshall Martin took a life estate or an estate in fee under the will of his father, Daniel Martin, deceased; and this raises a number of subordinate questions for discussion and determination.

Testator died November 4, 1883, leaving a will dated May 20, 1856; a widow, Elizabeth Martin, and several children survived him. The will made small bequests to all of these children except two sons, John Marshall Martin and Charles William Martin, for whom the father seems to have had especial care; to these two he devised his farm, the land in controversy, subject, however, to an estate for life or during widowhood, previously given by the will, to his wife, Elizabeth Martin. The language of the devise to testator's two sons, which we shall quote later, is the matter for particular consideration on this appeal.

Charles died May 25, 1859, in the lifetime of testator, unmarried and without issue. John survived his father and died, testate, July 22, 1909, leaving to survive him several children and a widow, Sarah J. Martin, to the latter of whom he devised the farm here in controversy. Elizabeth Martin, widow of Daniel Martin and mother of John and Charles, died January 10, 1913. On June 29, 1920, the farm was sold at sheriff's sale, as the property of Sarah J. Martin, to Elmer Grinage, who afterwards, on January 26, 1921, conveyed it in fee to Oliver M. Grinage, the defendant. On September 6, 1924, over fifteen years after the death of John Martin, almost twelve years after the expiration of the life estate in

Daniel Martin's widow, and about four and a half years after the sheriff's sale to defendant's immediate predecessor in title, plaintiffs, who represent or are the children of John Martin, brought an action of ejectment to recover the land, which suit ripened into the present case stated.

Testator, by the first item of his will, gave all his property, real and personal, particularly mentioning "the farm on which I now live," to his wife Elizabeth, "during her natural life if she so long remains my widow.". In the next seven items he makes bequests to his children other than John and Charles. Then follows the 9th item, about to be quoted in full; after which he appoints his wife executrix and directs payment of his "just debts and funeral expenses."

The 9th item, which is the one particularly up for construction, reads thus: "I give, bequeath and devise unto my two sons John Marshall and Charles William Martin and to their heirs the farm whereon I now live after the marriage or death of their mother Elizabeth as tenants in common and if both John Marshall and Charles William should die without heirs, then it is my will that the above-mentioned farm shall be sold and the proceeds thereof be equally divided amongst the above-mentioned legatees, share and share alike, but if either John Marshall or Charles William should die without heirs then it is my will that the above devised farm shall be held and enjoyed by the survivor and his heirs. And it is further my will that my wife Elizabeth shall pay the aforesaid legacies within five years after my decease and the legacies not to bear any interest and where any of the above legatees shall be indebted to my said estate at my death they are not to be required to pay interest upon the same from my decease unless upon so much as shall exide [exceed] their legacys."

Plaintiffs (appellants) claim that, in the above-quoted paragraph from testator's will, the word "heirs," after the gift to his two sons and after the word "survivor,"

was not meant in its strict technical sense as a word of limitation, but as synonymous with "children"; that its use in the will, when taken in connection with the phrase "should die without heirs," also employed, imports a definite failure of issue at the death of the life tenant, Elizabeth, and as a consequence the rule in Shelley's Case does not operate; on the contrary, that the devise of the fee is to the children of John and Charles, leaving in the latter but life estates (Chambers v. Union T. Co., 235 Pa. 610). They maintain that Charles having died unmarried, intestate and without issue in the lifetime of his father, and John having died in the lifetime of his mother, leaving children to survive him and to survive his mother, the life tenant, the property in question passed to these children upon the termination of the widow's life estate, they taking as purchasers, or devisees by implication.

On the other hand, defendant's contention is that the words "should die without heirs" refer to the period of survivorship, as between John and Charles, at the date of the death of the testator; that an estate then vested in John and his "heirs," meaning "heirs of his body," lineal descendants, or issue; that John, having survived the testator and his brother Charles (who died in testator's lifetime, unmarried and without issue), took an estate tail under the rule in Shelley's Case, which, under the Act of April 27, 1855, P. L. 368, was enlarged to a fee. In short, defendant claims that John Marshall Martin, a predecessor in title, took an estate in fee to the whole farm, which vested in him at the death of his father, the testator, subject only to the widow's life estate.

Anyone familiar with the law of decedent's estates, reading this will, would at once be impressed with the thought that, in all probability, testator intended to give a fee simple estate in the farm disposed of by item 9 to those who, the instrument strongly suggests, were his two favorite sons (hereinafter sometimes referred to as "his two sons"), or to such of the two as might survive

him and take under the will.   This impression would be
based, first, on the use and reiterated use of the techni-
cal word "heirs," which, under the rule in Shelley's Case,
when coupled with a grant or devise, is understood not
as giving an interest to the actual heirs of the grantee
or devisee, but to mark the quantity of the estate con-
ferred on the ancestor and to denote a fee simple abso-
lute, or, if "heirs" is read in the sense of heirs of the
body, a fee tail general, which, according to the law of
Pennsylvania, becomes a fee simple absolute.   The im-
pression that testator intended to give an absolute es-
tate, rather than a mere interest for life, to his two sons
or to the one of them who might survive him and take
under the will, would be reënforecd by the fact that, in
providing for his wife, testator said in so many words
that he gave her a life estate, thus showing he knew how
to mark out such an interest when he intended it, where-
as in providing for those who were to take subject to his
wife's estate, he used no such language.   Finally, the
fact that the sustaining of plaintiffs' contention would
lead to a construction which would give a fee simple
absolute to the grandchildren of testator, who, at most,
are only mentioned as devisees by implication, and re-
duce the gift to his two favorite sons, or to the survivor
of them, to a life estate, tells against the probability of
its correctness.   The impression referred to at the head
of this paragraph is borne out by a scrutinizing consid-
eration of the will, its structure, phraseology and evi-
dent purposes;   in addition, the proper technical con-
struction of the instrument demonstrates that John died
possessed of a fee simple estate.   All of which we shall
show in due course, though we find ourselves unable
either to follow precisely the reasoning of defendant or
to work out the case exactly along the lines pursued by
the learned court below.

It is clear that, standing alone, the devise of testa-
tor's farm to his two sons and to "their heirs," subject to
the particular interest in their mother, would give John

and Charles a fee simple estate, to vest at the death of testator, though not to be enjoyed in possession till the death of his widow. On this point, see Swank's Est., 270 Pa. 395, where, construing a devise somewhat similar to the one here involved, we said (p. 396): "When 'heirs' is employed in connection with remaindermen, the rule in Shelley's Case applies, unless other language in the will clearly demonstrates that the word was not intended in its technical sense, as a term of limitation. The strong presumption arising from the use of technical words of limitation is not easily overcome; it may be rebutted, but it can be done by nothing short of affirmative evidence of a contrary intent, so clear as to leave no reasonable doubt." The will continues, however, "If both John Marshall and Charles William should die without heirs" the farm is to be sold and the proceeds are to go to testator's other children. By the expression "without heirs," testator must have meant "heirs of the body," for the persons named by him to take as substituted devisees in default of heirs of the two sons were (in the absence of issue of such sons) themselves among the ordinary heirs of John and Charles, so, obviously, he could not have intended that class of heirs by the expression in question: Mayer v. Walker, 214 Pa. 440, 443; Church v. Baer, 236 Pa. 605, 607. If we read the word "heirs" as "heirs of the body," or "issue," and this course must be pursued, the will, to the point thus far considered, creates an estate tail general, which, under our law, is enlarged into a fee simple (Act of April 27, 1855, P. L. 368), unless the instrument contains internal evidence that, by the expression "die without heirs," testator did not contemplate an indefinite failure of issue. As to this, the fact that the gift over on failure of heirs is to named persons in being, indicates that, when writing the particular part of item 9 with which we are now dealing, testator had in mind a definite, rather than an indefinite, failure of issue (Mebus's Est., 273 Pa. 505, 516-17); that is, by the par-

ticular clause in hand, testator intended to provide, not for both sons being dead without issue at any time in the future, but for the event of both being dead without issue living at a definite or fixed time,—either at the date of testator's death, at the devisee's own death, or at the death of the widow of testator, to whom he had devised a life estate. But, whatever the clause providing for the event of the death of both sons without heirs, or issue, may mean, it is not the one to be applied on the facts in this case; for, though Charles died without issue, during the life of testator, John, who survived him, died after testator, leaving issue. Moreover, as shall be shown later on, the clause we have been discussing does not necessarily affect the interpretation of the subsequent clause, which governs here. The fact that, when writing the former clause, testator had in mind a definite failure of issue, does not help to show what period he intended this particular part of the will to operate in, whether before or after his own demise, or under what circumstances it was to be inoperative, or what estate he intended should pass under the clause that follows it, and which provides that, on the death of one son without heirs, the farm shall go to the survivor and his heirs. All of these points will be considered as we proceed.

The word "heirs" in this will cannot properly be construed as "children" (Fahrney v. Holsinger, 65 Pa. 388, 392), or as any other word of purchase; this being so, clearly, if we are right in saying that the clause which provides for the death of both sons without issue is not to be read into and does not control the subsequent survivorship clause, then, under the latter, John, defendant's predecessor in title and the survivor of the two sons, took a fee simple estate absolute. It seems advisable, therefore, to look further, in an effort to see whether this survivorship clause alone governs the facts in the present case, or whether, under the circumstances before us, it is affected by the other clause above-mentioned,

and, if so, to what extent; and, generally, to see what relation these two clauses bear to one another.

At times the provisions in a will may be transposed to make clear the apparent meaning of testator; at other times the order in which the various provisions appear is significant in itself. In the present case, for instance, had testator meant the provisions, "If both John......and Charles......should die without heirs, then it is my will that the......farm shall be sold and the proceeds thereof be equally divided amongst the above-mentioned legatees," to apply in the event of only one of these sons outliving him, the natural order would have been to place this provision after, instead of before, the one which immediately follows it, viz., "If either John......or Charles......should die without heirs then it is my will that the......farm shall be held and enjoyed by the survivor and his heirs." This transposition of clauses would make the will read, "If John or Charles die without heirs the survivor to take, but if both die without heirs then over to third parties." In other words, had testator intended, if only one of his two favored sons outlived him, that both of the above provisions should take effect, the first being carried over into the second, and giving the fee to the children of the survivor of his two sons (as plaintiffs would have us construe this will), if such was his intention, it seems that he would have stated his dispositions as follows: to his wife for life, at her death, to John and Charles, at the decease of either of them without heirs, to the survivor, and at the decease of such survivor without heirs, then over,—instead of leaving the last, and since it, if applicable, would carry the fee, the most important, disposition to be inferred from the prior clause concerning the dying of both sons without heirs. The fact that he did not write his will in the order suggested, but, on the contrary, put the provision concerning the death of both sons without heirs before the survivorship clause, being in a will, indicates that the first of these dispositions was intended

to be subordinate to the last of them, and that the former did not necessarily, under any and all circumstances, control or add anything to the latter. Therefore a construction ought to be avoided which makes the first govern the last, if another reasonable interpretation presents itself.

If the provision devising the farm to third parties on the death of both sons without issue must be read into the survivorship clause, then, according to plaintiffs' construction, it defeats the fee given to his two sons or the survivor of them. Such situations are often met by the simple expedient of holding that the clause which, under the conditions confronting the court, seems to defeat a main purpose of the will, was intended to apply only in event of the devisees named therein dying before testator (Jarman on Wills (6th Eng. ed. 1910), vol. 1, p. 573; Clayton v. Lowe, 5 B. & Ald. 636, 106 English Rep. 1323-4-5); but that course cannot be pursued in this instance, for, keeping in mind testator's scheme of distribution, as shown by item 9 of his will, no reason suggests itself why he should desire that part of the item which provides for the devise over to third parties after the death of his two sons to have any application before his own decease. We say this because those indicated by the clause in hand to take on the death of both sons without issue, were in fact the same persons who at law would be entitled to take the farm in controversy (after the life estate therein given to the widow of testator) had he made no further mention of this property in his will, there being no residuary provision in that instrument. This indicates that the particular direction under immediate discussion was not intended to apply before the death of testator; but there is present in the will a stronger indication to that effect, because the clause in question contains a direction to sell the farm and divide the proceeds, in the event of the dying of both sons without issue; this direction, of course, could be effective only after testator's own death, and, hence, it is reason-

able to conclude that the whole clause refers to that time. That is to say, when it is manifest from part of a clause, such as the one before us, that testator was providing only for what should happen after his own death, in the absence of evidence to the contrary it is to be assumed that he intended all parts of the clause to apply thus and thus only. Therefore, it may be seen that, on the state of facts which confronts us, the subordination of the clause in question cannot be accomplished by relating it to a time prior to the death of testator. A way in which this can justifiably be accomplished, however, is to construe the will so that the provision concerning the death of both sons shall be put into effect only if both of them survive their father, and then die without issue, which most likely was testator's intention.

We make the statement just written, concerning the probable intention of testator, because, should the clause as to the death of both sons be allowed, under circumstances such as those now before us, to control the survivorship clause, and the will be read as containing an implied gift from testator to the children of a surviving son (which plaintiffs contend is the proper interpretation), then, as said before, it would necessarily follow that testator intended such heirs (only, at best, mentioned as devisees by implication) to take a fee simple absolute, and that the surviving son's fee should be reduced to a life estate. In other words, looking at the will, for the moment, not in a technical or purely legal way, but simply from the standpoint of testator's probable desires as expressed therein, it is hardly believable that, after in plain words first giving John and Charles a fee, and subsequently in equally plain words conferring that character of estate on the survivor of the two sons,—John,—he, nevertheless, intended to say, by a clause sandwiched in between these two provisions, that John, who appears as one of his first cares, was to get a less estate than the latter's children, who, for all that this record shows, may have been born after the death

of testator and were not even known to him; yet such an assumption would seem to follow if the will were construed as expressing a plan of disposition whereby an estate taken by a survivor of the two sons at the death of testator, was intended to remain subject to the clause dealing with the dying of both sons without issue, even though, as a matter of fact, when the will took effect, there were no "both sons," and the one who survived had issue. Since, as hereinbefore shown, taking the clause in question as a whole, it is plain beyond doubt that it was intended to apply only after the death of testator, it is but fair to assume that, when he therein provided for the dying of both John and Charles, he contemplated that they both would outlive him; and, hence, that the clause was to have no application unless this should come to pass. Again, since this part of the will expressly provides for both sons dying without issue and that event did not happen, the clause fails of application on that score. In short, the clause was to apply only in special circumstances that did not eventuate up to the limit of time which, on any theory, can be allowed for that purpose,—the death of testator's widow,—and it has no control in determining the intent of testator as to the disposition of his property under another state of facts.

It may be that, when applicable, the provision for the death of both sons without issue was intended to control the quantity of the estate taken under the next clause of the will by a survivor of the two, and that this control over the estate of the survivor was to continue during the whole period of the widow's life interest, as plaintiffs contend; but, if such is the case, then, as we have already said, and now repeat, from the structure of the will, and other warrantable considerations, it seems logical to assume that the provision in question anticipated that both sons would outlive testator, and was to apply only if they did. The possibility of such a state of affairs disappeared, however, with the death of

Charles in the lifetime of his father; that event eliminated the applicability of this particular provision, and, if our premise is correct, removed the provision from the will, so far as its effect on other parts thereof is concerned. Thus, for present purposes, the clause which covers John's survivorship stands independent of the provision for the death of both sons without issue, which we have been discussing; and this, no doubt, was testator's intention.

With the clause providing for the death of both sons out of the way, we have left a devise to the two sons and their heirs, that is to say, a devise of a fee simple estate subject to a particular interest in their mother, followed by the provision that, should "either" of them "die without heirs," the other shall take the whole estate in fee. This being a survivorship clause, the phrase "die without heirs" may be construed to cover a death in the life time of testator; for, differing from the other clause with which we have been dealing, it contains no evidence of a contrary intention; and moreover, a clause which provides for survivorship as between devisees, or legatees, is as a general rule referred to the happening of that event in the lifetime of testator: Johnson v. Morton, 10 Pa. 245, 250, 251-2; Edelman's Est., 276 Pa. 503, 507; Van Kirk v. Jackson, 284 Pa. 497, 499. Therefore, whether we look at the will from the point of testator's intentions or only technically, when the clause in hand is read as an independent provision and the fact that Charles died without issue is considered, we find John, the survivor, holding the fee, with nothing either said or implied as to what should happen in the event of his death; so, it follows, he had an absolute estate which he could will to his wife, as contended by appellees, and not a life estate, with an implied remainder in fee to his children, as contended by appellants.

Up to the present time, while not losing sight of the appropriate rules of law and construction, we have devoted our consideration principally to a search for tes-

tator's intentions, as expressed in his will; for the modern method is to ascertain this fact where possible rather than to depend upon a purely technical construction. Now, however, we shall consider only the proper technical construction of the will, and this from plaintiff's standpoint,—that is, we shall assume the provision as to both sons dying without "heirs" to be still in the instrument, and that this provision must be read as applying to their deaths under the circumstances here present. What rules govern this situation and what results follow from their application?

Under the assumption just stated, the situation at testator's death would be as follows,—subject, of course, to the widow's life interest: One undivided half of the farm vested in John, by the terms of the will which gave the property to the two sons and their heirs, as tenants in common. This conferred a fee on John, whether "heirs," as here used, be given its ordinary signification or be construed to mean "heirs of the body," since the latter construction would create an estate tail, enlarged at once, by the Act of 1855, P. L. 368, into a fee simple. The other undivided half, which had been given, first, to Charles, with a provision that it should go to "the survivor" of the two brothers if one should die without "heirs," was also vested in John, because Charles was dead without "heirs" when the will became effective; therefore the gift to him had lapsed, and there was nothing to prevent the ulterior gift to the survivor from taking effect. Thus at testator's death, title to the two halves united in John, in fee.

But, since we are now assuming, for purposes of construing the will, that the clause which provides for the gift over to third parties on the death of both sons without "heirs," meaning heirs of the body, or issue, was an operative part of that instrument at testator's decease, the possibility of John's dying without issue intervenes, for had this event happened, it would have brought about the contemplated contingency; hence, during the life of

testator's widow, John's estate continued subject to the clause containing the gift over, whatever effect on such estate that clause might have, and, John having died leaving issue to survive him, who claim by virtue of this clause, it becomes important to ascertain what weight should be afforded the reference therein to his issue. Did it imply a gift to such issue (who are either plaintiffs at bar or predecessors of such plaintiffs) or are they named merely to describe the contingency on which the gift over to others is to take effect?

The clause last mentioned provides for either a definite or an indefinite failure of issue. If an indefinite failure was contemplated, of course, the issue themselves would have no interest,—John would have a fee tail, enlarged by the Act of 1855 into a fee simple absolute, and the gift over would be void under the rule against perpetuities. Again, if the gift over must be viewed as upon a definite failure of issue (and we have hereinbefore decided such to be the proper and necessary view), the result is the same so far as the present claimants are concerned, as we shall next show.

Where a devisee is given merely a life estate with the provision that on his death at a definite time without heirs, or issue, or children, as the case may be, the property is to go over to others, the "dying without issue" provision is usually read as implying a remainder in the life tenant's issue, heirs, or children, if he leaves any (Beilstein v. Beilstein, 194 Pa. 152, 154; English's Est., 270 Pa. 1, 6; Ball v. Phelan, 94 Miss. 293, 49 So. 956, 23 L. R. A., N. S. 895, 905; Lytle v. Beveridge, 58 N. Y. 592, 605);* but where, as in the present case, the will gives a fee in the first instance (not merely a life estate), followed by a devise over after a definite failure of children, heirs or issue, there is no implied gift whatsoever to any children, heirs or issue, who survive the time fixed

---

*The rule seems to be different in England, where, before the change in the law as to primogeniture, the courts did not seek, as we in Pennsylvania do, to avoid intestacies.

for the contingency to occur. Under these circumstances, the estate in the first taker is a fee simple, subject to go over, by executory devise, on the happening of the designated contingency; the mention of children, heirs, or issue of the first taker, is merely part of the description of that contingency, and, if it does not take place, the title of the first taker is absolute and indefeasible.

Lord Eldon, considering the question here involved, in Doe ex dem. Barnefield v. Wetton, 2 Bos. & Pul. 324, 328, 126 Eng. Rep. 1306, 1308 (a case in which words of devise denoting a fee were followed by a provision that, if the devisee should die leaving "no child or children or lawful issue" at the time of her death, then over to another and his heirs), said: "It has been argued in this case that it was manifestly the testator's intention that the children and grandchildren of S. Saunders [the first taker] should be benefited; but, however that may be, the question is whether the testator intended that the children and grandchildren should be benefited by this will or by some disposition to be made by S. Saunders. If she had any children living at the time of her death, the estate being given to her in fee, she would have abundant power to provide for both children and grandchildren. Nothing, however, is given to them by this will; they are merely named in the description of the contingency on which the estate is to go over," by way of executory devise.

In Eby v. Eby, 5 Pa. 461, 467, where the essential features of the devise were much like those in the will now under construction, this court said: "[It is] a limitation over upon a definite failure of issue, after a devise in fee......[and] it follows that [the first taker] took ......an estate in fee, with a remainder over by way of executory devise; but as she died leaving children...... the event did not happen upon which her estate was to be defeated, [and] it became a fee simple absolute, which [in the absence of a will] descended upon her children."

Of course, the last phrase of the preceding quotation is not opposed to the rule as stated by Lord Eldon; that the land in Eby v. Eby, "descended upon" the children, does not imply that the children took anything under the original will,—on the contrary, it shows that, the first taker having had a fee, the land descended as her property to the children under the intestate laws.

Jarman on Wills (6th Eng. ed. 1910) p. 673, speaking of the effect of a die-without-issue clause, says, "it is clear that where the estate previously devised is in fee, no such implication [of an estate in issue, etc., who survive] arises." See also the following cases in which the estate of the first taker was held to be a fee simple, subject to an executory devise over: Middleswarth's Admrs. v. Blackmore, 74 Pa. 414, 419, 420; Stoner v. Wunderlich, 198 Pa. 158, 161, 166; Wilson v. Wilson, 46 N. J. Eq. 321, 323, 19 Atl. 132, 133; and for the principles involved see 17 Am. & Eng. Enc. Law (2d ed.) 577; Lewis, The Law of Perpetuity, 187. These cases and law works are authority for the proposition that, by the phrase "if he should die without children," or "heirs," or "issue," in a will like the one now before us, there is no implied gift to children, etc., who survive the first taker. This is obviously so, for, otherwise, the estate of the first taker would not be, as there stated, a fee followed by an executory devise, but a life estate followed by alternative contingent remainders, or, as is sometimes said, a contingent remainder with a double aspect, i. e., either to the surviving children, etc., or to those named to take in default of issue, etc.

In the case at bar, therefore, testator's son John had a fee, defeasible, if at all, by an executory devise upon a failure of his issue, at his own death or at the end of his mother's life estate; but he died leaving children, who survived the life tenant. Under these circumstances and the above authorities, John's children had no title by implication; and, the contingency upon which the executory devise was to take effect not having occurred, and

now being impossible, John's title,—and that passed by his will, under which defendant claims,—became absolute and indefeasible.

Thus, it may be seen, whether the will of Daniel Martin be read as providing for a definite or indefinite failure of issue, whether the limitations contained therein, following the original devise of a fee to testator's two sons, be read as applying after or before his decease, and, finally, whether the result of our search for the intention of the testator or the technical construction of his language be followed, the end is the same.

While we do not altogether agree with the manner in which plaintiffs and defendant, respectively, arrive at the construction of this will, nor concur in the applicability of some of the rules relied on by the learned court below, yet we do agree that John Marshall Martin took a fee, not a life estate, and this is the essential point in the case.

The judgment is affirmed.