In re Estate of James Jackson, deceased. Appeal of Robert Jackson.

*Will—Construction of will—Devise.*

In case of doubt the construction of a will should be in favor of the first rather than of the second taker; of an absolute or vested estate rather than of a defeasible or contingent one; of a general or primary intent rather than of a particular or secondary one; and where a devisee is subjected to a charge or burden which it is unreasonable to think would have been imposed unless the estate given was intended to be a fee simple, doubts should be resolved in favor of the devisee.

Testator directed as follows: " I will and bequeath to my son R. and my daughter C. the homestead farm . . . . with all the farming utensils, stock, horses . . . . And if my daughter C. dies unmarried her brother R. shall have what remains of her share of my property, and if she marries, then her brother R. shall pay her one thousand dollars as her share of my said estate." The will imposed charges on the daughter's share amounting to more than the value of a life estate in one half of the farm. It appeared that C. had always lived with testator, and for ten years had had sole charge of his house. *Held*, that testator gave C. a vested estate unlimited in point of duration, and that the provisions following this gift were meant to become operative only in the event of her death in his lifetime.

Argued Oct. 12, 1896. Appeal, No. 19, Oct. T., 1896, by Robert Jackson, from decree of O. C. Beaver Co., Sept. T., 1892, No. 3, awarding petition. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Petition for partition.

The petition was filed by Catharine Jackson praying partition of land devised to her and her brother, Robert Jackson, by her father, James Jackson. Robert Jackson filed an answer denying that Catharine was seized of an absolute estate in the land, and averring that she had but a defeasible interest.

The will of James Jackson was as follows:

" I James Jackson of North Sewickley township, Beaver county, and state of Penn'.a, being old and infirm, but of sound mind memory and judgment,

" Do make and publish this my last will and testament in

manner following, first I commit my body to the dust from whence it sprang and my soul to 'God.' who gave it;

".And the property which 'God.' has entrusted me with after all my just debts and funeral expenses are paid, I will and bequeath as follows:

"Item 1st I will and bequeath to my son Robert Jackson and my daughter Catharine Jackson the Homestead farm of ninety acres with all the farming utensils Stock horses cows and young stock and household and kitchen furniture to each · share and share alike and if my daughter Catharine dies unmarried her brother Robert shall have what remains of her share of my property and if she marries then her brother Robert shall pay her one thousand dollars as her share of my said Estate; also to my son Robert, and my daughter Catharine, my, farm of twenty-two acres, more or less, situate in the same township as Homestead (known as the, 'Webber farm,')

"And I charge my son Robert and daughter Catharine with the support of my little Grandson Willie Webber Jackson that they give him good moral training and send him to the public school, and give him one years schooling before he is 21, years of age, at some good select or Parochial school.

"And to my daughter Sarah (now Mrs. Henry Potter) I will and bequeath nine hundred (900) dollars to be paid out of my estate by my son Robert and Kate in one year after my death,

"And to my son John Jackson I will and bequeath my farm of twenty acres more or less situate in the same township as Homestead farm, known as 'Piersol farm'

"And as I have already given my son James Jackson a farm of fifty acres (Fitzsimmons farm) that shall be his share of my said estate   Also I have given to my son Henderson Jackson fifteen hundred dollars his share of my estate;   And my son Andrew Jackson and my daughter Agnes I have already paid their shares before their deaths

"And I hereby constitute and appoint my son John Jackson as my sole executor of this my last will and testament, and that my estate it is my will that there shall be no appraisement of my personal or real estate or report to the Orphans Court of the same,   Hereby revoking all former wills by me made as witness my hand and seal this 18th day of November A. D. 1890,"

WICKHAM, P. J., filed an opinion of which the following is the material part.

From the statement of facts, agreed on by counsel, it appears that James Jackson, at the time of his death, was over seventy-eight years old. His daughter Catharine was about fifty-one, and Willie Webber Jackson about twelve. The testator out-lived his wife some ten years. Catharine lived with her father until his decease. That she was a faithful and trusted daughter is evident from this fact, and the further fact that the testator deemed her worthy to take an important part in the mental and moral training of his grandson. At the time the will was signed, the ninety acre tract of land was worth about $5,400, and the twenty-two acre tract about $800.

A first glance at this will recalls Coke's remark, which is as true today as when it was uttered: " Wills and the construction of them do more perplex a man than any other learning, and to make a certain construction of them, this excedit jurispruden-tium artem."

The interpretation contended for by Robert Jackson would, if adopted, result in depriving his sister, Catharine, of all bene-fit under the will. If she do not marry, the absolute interest in the personalty and the fee simple in the realty, given her by the first words of the devising clause, will be reduced to a life estate, and, if she do marry, she shall forfeit everything save the substitutionary bequest of $1,000, a sum insufficient to enable her to meet the charges imposed on her by the will.

Obviously, some construction should be sought for which will not work such seeming injustice, and which will effectuate what, looking at all the surroundings we have every reason to believe was the testator's main intent. It is impossible not to think that he had it in his mind to substantially benefit the faithful daughter who, it appears, had spent the best years of her life in his service. The will shows a desire and intention on the testator's part to provide fairly for each of his children. It is hardly possible that, as to Catharine, his purpose was to give with one hand and take away with the other; nor can we rea-sonably suppose that he would expect her to actually pay out in money, not counting the labor and anxiety attending the care and education of her nephew, more than the value of the life estate, or the $1,000 legacy.

In construing this will three general rules, now so well established and known that no authorities need be cited in their support, should be kept in view. First, that the first taker is the favorite of the law. Second, that a particular intent should yield to a general one. Third, that where a devisee is subjected to a charge or burden which, it is unreasonable to think, would have been imposed unless the estate given was intended to be a fee simple, all doubts should be resolved in favor of the devisee. It should also be kept in mind, that " every will is to be construed from its four corners to arrive at the true intention of the testator. Decisions upon other wills may assist, but cannot control the construction: " Fox's Appeal, 99 Pa. 382.

Giving due effect to the principles of interpretation just mentioned, I conclude that the words, " And if my daughter Catharine dies unmarried her brother Robert shall have what remains of my property, and if she marries, then her brother Robert shall pay her $1,000 as her share of my estate," should be governed by the rule of construction recognized in Biddle's Estate, 28 Pa. 59; Schoonmaker v. Stockton's Admr., 37 Pa. 461; Fulton v. Fulton, 2 Grant, 28; Fahrney v. Holsinger, 65 Pa. 388; Mickley's Appeal, 92 Pa. 515; King v. Frick, 135 Pa. 575, and other cases. Thus construed, the language quoted refers to a marrying or dying unmarried during the testator's lifetime, and not after.

It may be urged, in opposition to this view, that the words, " what remains of her share," suggest actual possession by Catharine, which could not take place until after the testator's decease. This, however, is not a necessary inference. In King v. Frick, supra, the language of the will was, " If my said son should die without children, grandchildren or wife living, then his portion of his estate, under this will, and any increase thereof, I bequeath and devise as follows." Looking at the context of the will, in that case, the words " any increase thereof " will be found much more suggestive of the idea above mentioned than are the words here under consideration, and yet they were given no effect. An ambiguous term should not be allowed to defeat a wise and just rule of construction.

Perhaps the construction here adopted is not the only one which can be argued for with some show of reason. I think, however, that it is more fair in its results, and in better accord-

ance with the testator's general intent than any other. Moreover, it is indirectly in harmony with decided cases.

It may be observed, that the will makes no express disposition of Catharine's original share, in case of her marriage. While, in that event, Robert was required to pay her the $1,000, his right to anything more than a share, under the intestate laws, of what she would have to forego, is left wholly to implication. But this is a question which can have no practical interest for him or any one else unless his construction be the correct one.

The objection to the jurisdiction of the court, set up in the last paragraph of the answer, is met by the act of May 9, 1889, P. L. 146.

And now, to wit, May 1, 1893, the answer of Robert Jackson is overruled and an inquest awarded.

*Error assigned* was decree awarding petition.

*Alfred P. Marshall*, with him *John M. Buchanan*, and *Wm. A. McConnel*, for appellant.—The whole provision of the will clearly indicates that the testator contemplated that whatever went to Catharine by his will should go to Robert at her death or marriage, whenever occurring, and not in the event of their occurring in the lifetime of the testator: Jessup v. Smuck, 16 Pa. 327.

The event to which the contingency is coupled in this clause is not the death of Catharine, an event that was inevitable; but the marriage of Catharine, an event that was not inevitable, an event that was within the range of possibilities, although Catharine was then over fifty years of age.

*Louis E. Grim*, with him *David S. Naugle*, for appellee.—The intent of the testator is to be gathered from the four corners of the will taken as a whole: Jauretche v. Proctor, 48 Pa. 466 , Thompson's App., 89 Pa. 36 ; Wright's App., 89 Pa. 67 ; Reck's App., 78 Pa. 432 ; Forsythe v. Forsythe, 108 Pa. 129 ; Hunter's Est., 6 Pa. 97.

In the construction of wills the law in doubtful cases leans in favor of an absolute rather than a defeasible estate, of a vested rather than a contingent one, of the primary rather than the secondary intent, of the first rather than the second taker, as the principal object of the testator's bounty: Smith's App., 23 Pa.

9; Etter's App., 23 Pa. 381; Rewalt v. Ulrich, 23 Pa. 388; Letchworth's App., 30 Pa. 175; Burd's Ex'r v. Burd's Adm'r, 40 Pa. 182; Womrath et al. v. McCormick, 51 Pa. 504; Fahrney v. Holsinger, 65 Pa. 388.

A devise of lands, without words of inheritance, charged with the payment of a sum in gross, conveys a fee, otherwise, if there be plain intent that the estate of the devisee should be limited to a fee tail: Burkhart v. Bucher, 2 Binn. 455; Dixon v. Ramage, 2 W. & S. 142; Harden v. Hays, 14 Pa. 91; Coane v. Parmentier, 10 Pa. 72; Hinkle's Appeal, 116 Pa. 490.

In construing a will, the circumstances of the testator, his family and the amount and character of his property, should be taken into consideration: Postlethwaite's App., 68 Pa. 478; Markley's Est., 132 Pa. 354.

An absolute devise, followed by a proviso that if the devisee should die without children, grandchildren or wife living, then over, conveys an unrestricted estate in fee to the first taker: Biddle's Est., 28 Pa. 59; King v. Frick, 135 Pa. 575; Mitchell v. P., Ft. W. & C. Ry., 165 Pa. 645; Stevenson v. Fox, 125 Pa. 568; Coles v. Ayers, 156 Pa. 197 : McCormick v. McElligott, 127 Pa. 230; Hetrick v. Addams, 12 W. N. C. 367; Barker's Estate, 33 P. L. J. 17; Mickley's Appeal, 92 Pa. 514; Fitzwater's Appeal, 94 Pa. 141; Karker's Appeal, 60 Pa. 141; Budd's Estate, 49 L. I. 502; Waugh's Appeal, 78 Pa. 436; Morrison v. Truby, 145 Pa. 540; Stevenson's Estate, 19 W. N. C. 291; Fahrney v. Holsinger, 65 Pa. 388; Shirey v. Postlethwaite, 72 Pa. 39 ; Sheetz's Appeal, 82 Pa. 213.

OPINION BY MR. JUSTICE FELL, January 4, 1897 :

In the case of Jessup v. Smuck, 16 Pa. 327, relied on by the appellant, the son whose estate was held to be limited was treated in the will as living at a period subsequent to the death of the testator, and the terms in which the contingency and limitation were expressed were considered as repelling the inference that the testator contemplated the death of the first taker before his own. The principle that the devise of a fee absolute in the first instance cannot be reduced to an estate for life unless the intention to do so is clear is recognized in the opinion, and the case is not in conflict with the rule of construction so often stated in our cases from Biddle's Estate, 28 Pa. 59

to Mitchell v. P., Ft. W. & C. Ry., 165 Pa. 645, that where the gift is plainly a fee simple to take effect immediately in possession a devise over in case of the death of the first taker means his death in the lifetime of the testator. The decision of the learned judge of the orphans' court is in harmony with the general rules of construction, and with the act of April 8, 1833, which provides that "all devises of real estate shall pass the whole estate of the testator in the premises devised, although there are no words of inheritance or perpetuity, unless it appears by a devise over, or by words of limitation or otherwise in the will, that the testator intended to devise a less estate." The construction, if it is necessary to resort to the established rules, should be in favor of the first rather than of the second taker: of an absolute or vested estate rather than of a defeasible or contingent one; of a general or primary intent rather than of a particular or secondary one: Smith's Appeal, 23 Pa. 9; Etter's Estate, 23 Pa. 381; Letchworth's Appeal, 30 Pa. 175; Womrath v. McCormick, 51 Pa. 504.

This construction, we think, gives effect to the actual intent. The real estate devised by the testator to his daughter was worth about $6,200. The stock on the farm was owned by the son. The testator's daughter had always lived with him, and for ten years had had sole charge of his house. Her proportion of the charges imposed, the payment of the legacy to another son and the maintenance and education of the testator's grandson, amounted to more than the value of a life estate in one half of the farm, and unless this construction be given she takes nothing of value under the provisions of a will certainly intended to be of substantial benefit to her. The implication arising from the words " what remains " is that she had an unlimited power of disposal, which is inconsistent with the existence of a valid limitation over. In the first instance he gives her a vested estate unlimited in point of duration, and that the subsequent provisions were meant to become operative only in the event of her death in his lifetime is quite as probable as any other supposition. There is at least no clear evidence of a contrary intent, and the law regards with disfavor conditions subsequent divesting or reducing a vested estate.

The assignments of error are overruled and the order of the orphans' court is affirmed at the cost of the appellant.