# Smith's Petition.

*Wills—Construction—Will written by testatrix—Holographic will—Technical meaning.*

1. Where a will shows that it was written by testatrix herself, the language employed in any particular instance, when not clear, should be given the meaning of testatrix, so far as this can be gathered from the writing as a whole rather than a fixed technical meaning, where the latter conflicts with the former.

*Wills—Construction—Gift to children—Life estate or estate in fee.*

2. Where testatrix directs that the remainder of her estate be equally divided among her four children, naming them, and further states that "my children are to have share and share alike as long as they live and in case of their death their share is to revert to their children," and other portions of the will show conclusively that the reference to the death of the children meant after the death of the mother, the children take a life estate and not a fee simple.

3. The rule of construction whereby a devise over, in the event of the death of the first taker, is generally understood to mean death occurring in the lifetime of the testator, applies only where the will itself shows no other period to which the words may, on a proper interpretation, be referred; and the rule is never applied where the first takers referred to are treated as living at a period subsequent to the death of testator.

*Wills—Construction—"Revert"—Words and phrases.*

4. Where testatrix directs that her children are to have share and share alike in her estate "as long as they live and in case of their death their share is to revert to their children," the word "revert" is to be construed as a word of gift, with the meaning of "to go to" and as sufficient to carry the estate, after the expiration of a particular estate, to the remainderman; it is not to be construed as a synonym for "descend."

VOL. CCXCI—9

5. In such case testatrix intended by the use of the word "revert" and its context, to provide that, on the death of her children (the first takers), the respective shares enjoyed by them during life were to go to their children as remaindermen, and to accomplish such result, it was not necessary to say "I give and devise" such an interest to such devisees.

6. The fact that testatrix used the word "revert" in another part of the will, in its ordinary sense of "going back" by directing that a legacy should "revert" on the death of a legatee to her direct heirs, cannot be used to govern the construction of the gift of the remainder of her estate to her children, inasmuch as the will shows that the word was used on each of these occasions to accomplish a different purpose.

Argued September 30, 1927.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

Appeal, No. 161, March T., 1927, by William F. Bennett et al., from declaratory judgment of C. P. Allegheny Co., July T., 1927, No. 226, In re Petition of Harry C. Smith.   Affirmed.

Petition for declaratory judgment.   Before EVANS, J.

The opinion of the Supreme Court states the facts.

Judgment against the respondents, children of Elizabeth Bennett.   Respondents appealed.

*Error assigned* was judgment, quoting record.

*Sidney J. Watts,* for appellants.—Although being together a part of the introductory paragraph and the second sentence of the directly-dispositive language of the will, this devise by the testatrix of the "remainder of" her "estate to be equally divided between" her four children, is technically and actually a residuary devise: Willard's App., 68 Pa. 327; Hackett v. Com., 102 Pa. 505; Bennett v. Sutphen, 266 Pa. 168; White v. Com., 110 Pa. 90; Hyde v. Rainey, 233 Pa. 540; Harden v. Hays, 9 Pa. 151; Turbett v. Turbett, 3 Yeats 187.

Testatrix charged her land with the payment of her debts and the legacies bequeathed by her, and this operates to sustain the inference that she intended her four children to take a fee simple title therein: Sloan's App., 168 Pa. 422; Coane v. Parmentier, 10 Pa. 72; Crone's App., 103 Pa. 571; Cook v. Petty, 108 Pa. 138; Gallagher's App., 48 Pa. 121; Mellon's App., 46 Pa. 165; Okeson's App., 59 Pa. 99; Riley's App., 34 Pa. 291; Wertz's App., 69 Pa. 173; Brisben's App., 70 Pa. 405; Etter v. Greenawalt, 98 Pa. 422; Fidelity Trust Co. v. Bobloski, 228 Pa. 52; Jackson's Est., 179 Pa. 77; Fahrney v. Holsinger, 65 Pa. 388.

The clause relating to the deaths of the four children contemplates only death in the lifetime of testatrix: Coles v. Ayres, 156 Pa. 197; Mickley's App., 92 Pa. 514; King v. Frick, 135 Pa. 575; Ault v. Karch, 220 Pa. 366; Richards v. Bentz, 212 Pa. 93; Engle's Est., 180 Pa. 215; Jackson's Est., 179 Pa. 77; Biddle's Est., 28 Pa. 59.

The law favors the heir and the first taker: Biddle's Est., 28 Pa. 59; Corr's Est., 202 Pa. 391; DeSilver's Est., 142 Pa. 74; Jacob's Est., 140 Pa. 268; Nebinger's Est., 185 Pa. 399; Gillmer v. Daix, 141 Pa. 505; Hartley v. Hartley, 265 Pa. 115.

*O. W. Brown,* with him *T. S. Brown,* for Penna. Trust Co., guardian of John W. Bennett et al., minors.—No terms of inheritance are found in the devise to the four children, but rather the contrary: Shirey v. Postlethwaite, 72 Pa. 39; Kiefel v. Keppler, 173 Pa. 181.

The rule that a fee once given may not be cut down, does not apply.

Opinion by Mr. Chief Justice Moschzisker, November 28, 1927:

In this proceeding for a declaratory judgment, the court below construed the will of Elizabeth Bennett, who died October 13, 1918, as giving to each of her four

children a one-fourth undivided share of her residuary estate, for life, and, at the death of each child, the share involved to such decedent's children in fee. Judgment was entered accordingly. Since this decision prevented the four children of testatrix from conveying a fee in certain real estate which they had sold to Harry C. Smith, the petitioner in the proceeding for the declaratory judgment, they have appealed.

The petition for the judgment recited, in brief, that William F. Bennett, Daniel M. Bennett, Margaret A. Hurrell and Jennie B. Flenniken, the children of testatrix, with the wife of D. M. Bennett and the husband of Margaret A. Hurrell, had undertaken to convey, for the sum of $2,760, a fee simple title to certain real estate, which the four first named claim as devisees under the will of their mother; that a question of law had arisen between the vendors and vendee as to whether the above devisees possessed a fee simple estate which they could convey to a purchaser, and that this question involved the construction of the before-mentioned will. The four children of testatrix, with their several spouses, where any, and, in addition, all the adult children of such children, were included as parties to the proceeding, also the Pennsylvania Trust Company of Pittsburgh as guardian of several minor grandchildren of the testatrix, and the Potter Title & Trust Co., of the same city, as trustee of the estates of unborn grandchildren. The petition sets forth that the eleven grandchildren named therein were all living at the date of the will and at the time of the death of testatrix; it also designates their parents, respectively.

In the will, testatrix, after stating a desire to "dispose" of her estate, and naming two of her children to have "jurisdiction over the disposal of [her] clothing, linens, bedding [and] bric-a-brac," provides as follows: "The remainder of my estate to be equally divided between [my four children] Daniel M. Bennett, William F. Bennett, Margaret A. Hurrell and Jennie B. Flen-

niken,* * * *My children are to have share and share alike *as long as they live* and in case of their death their share is to revert to their children." (The italics are by the writer of this opinion.) The question which this devise raises is, whether thereunder the four above-named children of testatrix take life estates in the realty here in controversy or fee simple interests.

Before entering upon a consideration of the question just put, it should be stated that the provisions represented by the asterisks in the above quotation are briefly as follows: Immediately after the name of Jennie B. Flenniken there is a comma, and then the will reads thus: "after all just claims against it [the estate of testatrix] be satisfied & $100.00 to be set aside on interest the interest to be expended each year in careing for graves (and lot in the cemetery) of my immediate family, $100.00 to be given to each of my grandchildren [naming them, eleven in all]. The above amount to be given when lot[s] are sold to that amount, my four children to be executors. In case of the death of any of the above named grandchildren before receiving the sum of $100.00 the same revert to my direct heirs. If my children act as executors [no bond to be required]. All just claims against my estate to be satisfied and a stone to be placed at my grave......With the exceptions of $10.00 [paid on cemetery lot by testatrix and M. J. Bennett, entitling them both to burial there] the lot belongs to D. M. Bennett." All of the matter just recited is inserted between the first and last parts of the devise to appellants previously quoted; then testatrix states, "I desire that my bed and furnishings go to Lou Jane Bennett, she having no mother to provide such for her"; and, finally, "It is my will that Jennie Flenniken have $300.00 for caring for me when I had a broken hip."

Appellants contend that, in construing the devise here in controversy, the words of gift, first contained therein, must be accepted (under section 9 of the Act of April 8, 1833, P. L. 249, reënacted by section 12 of the Act of

June 7, 1917, P. L. 403, 407) as conferring an absolute fee simple estate, and that the subsequent words, to the effect that they, the devisees, were "to have share and share alike as long as they lived and in case of their death their share to revert to their children," must be construed in such a way as not to cut down this prior absolute gift to them.

We agree with the court below that the present is not a case like Cross v. Miller, 290 Pa. 213, and others of its kind, where the will, after devising a fee to children, indicated, by subsequent language, a secondary intent to strip the estate thus given of some of its inherent qualities; on the contrary, taking the testamentary provisions now before us as a whole, they show a clear purpose to give but life estates to the appellants.

The will evidently was drawn by Elizabeth Bennett herself; while she may have been ignorant of the precise and technical meanings of certain words employed, yet testatrix evidently knew how she wanted to dispose of her estate, and the sense in which she used the words or expressions in question becomes reasonably clear, in each instance, when their context and the will as a whole is considered.

It may be conceded that the first words in the general devise to the children of testatrix, if these words stood alone, would be sufficient, under the above-mentioned acts of assembly, to give appellants fee simple estates, but this legislation particularly provides that devises without "words of inheritance," shall not vest a fee where the will indicates, "by words of limitation or otherwise," an intention "to devise a less estate"; and that is this case, as will now be shown.

Granting that, "in the construction of a will of doubtful meaning, every intendment is made in favor of the heir or next of kin" (Nebinger's Est., 185 Pa. 399, 404; Brush's Est., 277 Pa. 9, 13), and that "the law leans in favor of an absolute, rather than a defeasible estate" (Smith's App., 23 Pa. 9, 11; Jackson's Est., 179 Pa. 77,

83; Carter's Est., 254 Pa. 565, 568); further, that, where real estate is devised subject to the payment of bequests to others, this is an indication that more than a life estate was intended for the first taker (Coane v. Parmentier, 10 Pa. 72, 73; Fidelity Trust Co. v. Bobloski, 228 Pa. 52, 55); also granting that, death being a thing certain to happen, where a testator speaks of what is to occur to a gift in the event of the death of the first beneficiary named by him, death is generally construed to mean dying in the lifetime of the testator (Mickley's App., 92 Pa. 514, 517; Shornhorst v. Jacob, 272 Pa. 223, 225; Freeman's Est., 281 Pa. 190, 195; Seewald's Est., 281 Pa. 483, 486); yet none of these considerations, urged by appellants to sustain their contention that they are vested with estates in fee, can control where, as in this case, the will shows that only life estates were intended for the children of testatrix, and that the reference to their deaths meant death after that of their mother,—and not during her life, as appellants would have us decide.

As shown by the longer of the two excerpts above quoted from the will (see paragraph four of this opinion), testatrix provides "in case of the death" of any of her named grandchildren before receiving the $100 which she leaves to each of them, that sum is to "revert" to the "direct heirs" of testatrix, meaning her four children. In this gift of $100 to each of her grandchildren, testatrix directs that the amounts in question are to be paid only when lots belonging to her estate are sold to raise the money required for that purpose, stating at this point that her four children are to be executors, and assuming, apparently, that they would sell the lots. All of this plainly shows that, when testatrix provided, "in case of the death of any of the above named grandchildren before receiving the sum of $100.00, the same [was to] revert to [her] direct heirs," she meant in the event of the death of any of the grandchildren after her own death; for, of course, the lots in question could not be

sold as part of her estate (to pay the bequests to her grandchildren) until after her death. Testatrix having used the phrase "in case of the death of" to mean death after her own death, in connection with these bequests to her grandchildren, when we find precisely the same phrase used, a few lines later on, in connection with her children, each should be given a like meaning unless there is good reason to the contrary (Martin v. Grinage, 289 Pa. 473, 484, 485); and there is nothing to suggest that testatrix intended the phrase under discussion to have one meaning in connection with her grandchildren and quite another meaning in connection with her children. Moreover, and particularly, since testatrix provides in the general devise to her children, that they are "to have share and share alike as long as they live," it is obvious this must mean as long as they live after the death of the giver of such shares, for the estate would not come into existence so that anyone could share therein prior to that event. "The rule of construction" relied on by appellants, "whereby a devise over, in the event of the death of the first taker, is generally understood to mean death occurring in the lifetime of the testator, applies only when the will itself shows no other period to which the words may, on a proper interpretation, be referred; and the rule is never applied where the first takers referred to are treated as living at a period subsequent to the death of testator": Mebus's Est., 273 Pa. 505, 516. This rule has no place here, where, as we have shown, the grandchildren are named in the will as devisees with an interest which vested at the death of testatrix, and not as mere substitutionary devisees, to benefit only in the event of the death of their parents during the life of the testatrix.

Appellants, to sustain their claim of a fee, further contend that, when the will said, in case of the death of testatrix's children, their share was to "revert to their children," the word "revert" was used as a synonym for

"descend," meaning to descend directly from the first takers, as a source of inheritable succession, to their issue indefinitely; and, in this connection, appellants argue that "children," as last employed, was intended merely as a word of limitation. While the word "revert," as here used, requires some consideration,—which we shall presently give it,—yet we are not impressed that testatrix employed it in an endeavor to install her children as a source of inheritable succession, or that she used "children" in other than its primary meaning as a word of purchase, as distinguished from one of limitation.

When considering the proper construction to be put upon this word "revert" where testatrix provides that in case of the death of her children "their share is to revert to their children," it must be remembered that Elizabeth Bennett obviously wrote her own will, and that the language employed in any particular instance, when not clear, should be given her meaning, so far as this can be gathered from the writing as a whole, rather than a fixed technical meaning, where the latter conflicts with the former. The legal signification of "revert" is for property to go back to and lodge in a former owner, who parted with it by creating an estate in another, which has expired (Words and Phrases, 2d ed. 6213; Anderson Law Dictionary, 899), or to return to and lodge in the heirs of such former owner; but it is plain that the word was not used with this strict technical meaning in the provision now under consideration, for testatrix could neither have intended the property with which she was dealing to return to herself, as devisor, nor to her children, as heirs, since she specifically provided that the reversion was to be to "their children,"—that is, her grandchildren. There are ample precedents (as will be shown in the course of this opinion) for using the word "revert" as one of devise, to create remainders to take effect after the expiration of particular estates, and this no doubt is what testatrix

wanted to accomplish in the present instance. She intended, by the use of "revert" and its context, to provide that, upon the death of her children (the first takers), the respective shares enjoyed by them during life were to go to their children as remaindermen, and to accomplish that result, it was not necessary to say, "I give and devise" such an interest to such devisees; any phraseology which, from its context and the will as a whole, shows an intention to make the gift is sufficient for the purpose: Packer's Est. (No. 2), 246 Pa. 116, 127; Rau's Est., 254 Pa. 464, 471; Brown's Est., 289 Pa. 101, 119.

While our research has disclosed no other Pennsylvania case where the word "revert" appears in a devise, or where, in the construction of a will, this particular word was given the meaning of carrying a gift to remaindermen, yet there are numerous instances in other jurisdictions where it has been so interpreted. In the following cases "revert" was construed as a word of gift, with the meaning of "to go to," and as sufficient to carry the property in question to remaindermen, after the expiration of a particular estate, just as in the present case: see Beaty v. Trustees, etc., 39 N. J. Eq. 452, 463; Bennett's Est., 134 Cal. 420, 66 Pac. 370; Johnson v. Askey, 190 Ill. 58, 60 N. E. 76, 77; Goerlitz v. Malawista, 56 Hun. 120, 80 N. Y. Supp. 832, 833; Warrum v. White, 171 Ind. 574, 86 N. E. 959, 960; Blackwell v. Blackwell, 147 Ky. 264, 143 S. W. 1010, 1011. See also Snell Exrs. v. Snell, 38 N. J. Eq. 119, 124.

After deliberating on every part of this will, we find no support for appellant's contention that "revert" was used by testatrix as a synonym for "descend." In the first place, the word is used in connection with "children," which is prima facie a word of purchase, and this means "acquiring an estate otherwise than by descent" (Anderson Law Dic. 846). Then the word "descend" conveys the thought of constantly going onward from one generation to another; "revert," of going back, in

some manner or to some extent. Therefore, the latter would hardly be employed by anyone as an outright substitute for the former. Here, so far as can be judged from the light thrown by the will as a whole on the part now before us for construction, testatrix, when writing this particular provision, instead of conceiving, as the law does, of the simultaneous passing from the devisor to the life tenants and ultimate beneficiaries of both the life estates and remainders, apparently thought of her property as moving forward from her to her children, and, on their deaths, back, as it were, to her estate, so that it might serve as a conduit to carry the remainders on to her grandchildren; and, by the use of the word "revert," she probably sought to express the last two ideas,—of the property going back, in the sense just stated, from the life tenants, then on to the remaindermen. But, whether this surmise as to the mental operations of testatrix be correct or not, in both instances where she employed the word "revert," warrant may be found for that course (as we have shown), and the last use of it, to create remainders, has considerable judicial support, as indicated by the decisions cited from other jurisdictions, supra.

In connection with the $100 gifts to the grandchildren of testatrix (see paragraph 4 of this opinion), even appellants agree that "revert" was intended to have its common meaning of returning to an original source; that is to say, if a grandchild should die before receiving its $100, the right to that $100 was to go back to the children of testatrix, the devisees for life of the whole residuary estate subject to these $100 payments. This prior use of the word "revert" with a somewhat different meaning from its subsequent use in the general devise to appellants, cannot be allowed to govern or influence our construction of the latter, because it is quite plain, as we have shown in this opinion, that the word was used on each occasion to accomplish a different purpose.

Finally, this is not a case where the assumption, sometimes made, that children, or heirs at law, were the special care of a devisor, can be allowed controlling effect, for the will shows that this devisor had in mind the desire to benefit her grandchildren quite as much as to care for her children; and the fact that, at one point in the instrument, testatrix refers to the latter as her "direct heirs" has no significance as indicating a special, or exclusive, care for them, since by that expression, as used, she evidently meant no more than "first takers." The will as a whole shows that testatrix intended just what she said, that these first takers, her four children, were to have the property here in question, share and share alike, so long as they might live, and since the will shows that she meant live after her own death, and there is a limitation over, of each share, at the death of the holder, to his or her children, these first takers have but life estates, as correctly determined by the court below.

Prior to the construction of this will in the proceeding now before us, it was passed upon by the Orphans' Court of Allegheny County, in distributing the personal property of testatrix, and that tribunal also reached the conclusion stated by the court below,—namely, that appellants are entitled to no more than life estates.

It is not necessary to discuss any of the numerous authorities contained in the briefs of counsel, for none of them governs here, but it may not be amiss to mention two recent cases which touch upon points and involve principles more or less relevant to the present controversy; these are Martin v. Grinage, supra, and Reif v. Pepo, 290 Pa. 508. The other cases hereinbefore cited are named, not as governing precedents, but because they are illustrative of the points, or contain good statements of the rules, in connection with which they are severally mentioned.

The judgment is affirmed at cost of appellants.