## Sheldrake's Estate.

Argued January 11, 1932. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey and Drew, JJ.

*Samuel K. White,* of *Peck & White,* with him *E. Leroy Van Roden,* for appellants.—The proceeds of war risk insurance are clearly given and divided among the children by the first paragraph of the will: Cryan's Est., 301 Pa. 386; Fisher's Est., 302 Pa. 516; Williamson's Est., 302 Pa. 462; Lonergan's Est., 303 Pa. 142; Biles v. Biles, 281 Pa. 565.

No later clause of the will is effective to disturb the prior gift: Patton's Est., 268 Pa. 367; Lonergan's Est., 303 Pa. 142; Disston's Est., 257 Pa. 537.

544

A clear and precise clause of gift is not controlled by a later clause repugnant only when strengthened by unnecessary inference: Biles v. Biles, 281 Pa. 565.

The last clause of the will is nothing more than an erroneous recital, and, therefore, does not imply a gift of the war risk insurance to George: Fleck v. Harmstead, 304 Pa. 302.

*Jos. G. Magee, Jr.*, with him *S. L. Hagy*, for appellee. —The award of the war risk insurance to George B. Sheldrake, Jr., was clearly correct and is the only construction that can be given to the will which will carry out the testator's intention: Thompson's Est., 229 Pa. 542; Smith's Petition, 291 Pa. 129.

OPINION BY MR. JUSTICE KEPHART, May 26, 1932:

The provisions of the will of George B. Sheldrake necessary to a decision in this case are as follows: "I, George B. Sheldrake, do hereby will and bequeath everything that I own both real and personal to be divided as follows, $100 to Howard M. Stuckert, Jr., $100 to Raymond W. Sheldrake, Jr., $100 to Philip A. Stuckert to be kept in trust in Philadelphia Saving Fund until they are twenty-one years of age. All money to be divided as follows: ½ to my daughter, Elizabeth A. Stuckert; ¼ to my son George B. Sheldrake, Jr.; ¼ to my son Raymond W. Sheldrake. To my daughter I also will all my jewelry and papers in my possession at time of death. To Howard M. Stuckert, Jr., book case, all books, stamp collection, coin collection and all souvenirs..... Money in Philadelphia Saving Fund, Girard Trust, Philadelphia Fire Department Relief Association, State Firemans Association, and Hancock Insurance. All expenses to be paid before settlement. I name my daughter, Elizabeth A. Stuckert sole executors to serve without fee. The War risk Insurance will revert to my son George according to rulings of U. S. Government."

The contest is over the last paragraph of the will, the war risk insurance. The court below awarded it to George B. Sheldrake, Jr., as provided therein. The appellant is his brother. It was contended in the court below that the testator did not make a gift of the insurance, but that the last clause was inserted in the will for the information and guidance of the executor to assist in locating the assets of the estate; that the first part of the will contained a complete disposition of the estate; and, as he used adequate words for the purpose, the word "money" comprehending the insurance fund, there is no repugnancy between the first and last part of the will. Furthermore, that the last paragraph shows on its face that it is an erroneous recital of a fact without legal effect. It was there contended that the deceased died intestate as to the insurance, and it is here contended that it should be distributed ½ to his daughter, and ¼ to each of his sons, George and Raymond.

Testator's intention must be gathered from the words he uses in the disposition clause. Neither surmise nor the application of rules of construction nor any conjectured theory will be permitted to defeat it. While it is true that the entire instrument should be considered, it is on the other hand clear that this rule is only available when there may be doubt as to a particular disposition of a part of the estate. Where a testator uses language that is plain and certain, which does not conflict with any other part of the will, there is no necessity to consider the entire instrument, nor will a general scheme of distribution be attributed to the testator which will defeat a disposition of particular property by a clause of the will evidencing a different scheme as to that property: Thompson's Est., 229 Pa. 542; Fleck v. Harmstad et al., 304 Pa. 302.

The testator believed he was disposing of his entire estate. He undertook to do it. After bequeathing $100 to each grandchild, he directs all his money to be di-

vided between his children, the jewelry and papers to Mrs. Stuckert; bookcase, stamp collection, etc., to one of his grandchildren. He uses the word "money," but it was not used in the sense of "everything I own both real and personal." He specifically states where the money is to be found, and the will shows he regarded the war risk insurance not as money but as a thing separate and apart from the subjects specifically mentioned and bequeathed to his children. Having so regarded it, and having mentioned it in connection with George's name as "reverting" to him, how could it be held that he intended to divide this insurance, one-half to his daughter and one-quarter to each of his sons? To so consider it would be rewriting testator's will. Even if he had made a mistake in mentioning it as going to George, because the laws of the United States required it, still such mistake would not inure to the benefit of the children. We cannot conjecture what division testator might have made of it, if this was a mistake. To sustain appellant's view we must strike out this paragraph and hold that he died intestate as to the war risk insurance. But this would be contrary to the testator's intention for he wills and bequeaths "everything" that he owns, "both real and personal."

The testator became entitled to the insurance money on the death of his son, a captain in the World War. He had been receiving monthly payments on it since the son's death, and for more than two years. He was authorized and empowered by the "rulings of the United States Government" to dispose of what remained of this insurance at his death. See the Act of Congress of June 7, 1924, chapter 320, section 330, 43 Stat. at Large 607, page 625; Act of Congress of March 4, 1925, chapter 553, section 14, 43 Statutes at Large 1302, page 1310. When he received the monthly payments it is quite reasonable to suppose that he had made inquiry as to how long these payments would last, and what would become

of those that were unpaid at his death. The Acts of Congress answer both these questions.

In bequeathing the insurance he would not mention any amount, as the sum would depend entirely upon how long he lived. While the will dates from his death, the gift of the war risk insurance was of a diminishing sum that might entirely disappear before death.

The will, drawn by one ignorant of technical words necessary to dispose of his estate, shows he knew what he wanted to do with the insurance; he used words sufficient to convey his meaning. He says "The War risk Insurance will revert to." The word "revert" would ordinarily mean "give back to" or "return to," but the words could not have been used here in their strict sense. The title to the insurance never was in George, and it could not "revert to" him, and the words must be taken in the sense in which they are meant, that is, "go to." See Smith's Petition, 291 Pa. 129, for a similar construction of "revert." The clause "according to rulings of U. S. Government" might well indicate that the testator believed he had authority to give the war risk insurance to George, or that it was to go to George in such amounts, either in monthly payments or a commuted value, as the rules of the United States Government might determine. Moreover, Congress has frequently altered the course of payments of war risk insurance, as the federal statutes disclose. It was possible that within the period of payment to the father, Congress might further alter this course of payment, and if it did and George was prohibited from receiving it, the language of the testator's will would aptly apply.

If he had not wished and intended that his son should receive the insurance, it was very easy for him to have shown that intention by not mentioning the insurance, but, having stated it, and that it should go to George in some form, the will shows his specific intent that his son was to be the beneficiary. The clause does not lack

testamentary words to show that intention, and the court below was correct in its conclusion.

Decree affirmed at appellants' cost.

DISSENTING OPINION BY MR. JUSTICE DREW:

I cannot agree with the majority in this case. There is no doubt testator intended to devise his whole estate, but it seems to me clear that he made no disposition of his war risk insurance. The explanation of this is given by himself—because he believed that at his death the insurance would "revert to my son George according to rulings of U. S. Government." I cannot imagine any language which would show more conclusively testator's belief that at his death the insurance must go to George. This obviously was the thought of testator and, because he was mistaken in this, he definitely did not bequeath the insurance. It did not pass under his will. As to it he died intestate, and it should now be distributed to his children under the intestate laws.

Smith's Petition, 291 Pa. 129, is, in my opinion, no authority for the position taken in the majority opinion. In that case the testatrix, in her will, provided, "The remainder of my estate to be equally divided between [my four children]. My children are to have share and share alike as long as they live and in case of their death their share is to revert to their children." We there held that the testatrix, by this language, intended her children to have a life estate in her property, with remainders to her grandchildren; that at the expiration of the life estates the property was to "go to" her grandchildren. There can be no question that decision was correct. The use of the word "revert" clearly meant "go to," although it has no such meaning in any dictionary. We were interpreting the intention of the testatrix; that was clear, and we gave effect to it. The word "revert" as used here may be given the same meaning, but that does not change the conviction of the testator that the insurance went to George because of rulings of the U. S.

Government. The testator certainly believed he was helpless to direct the distribution of this insurance, and he was careful to explain why, perhaps to show his other children the reason for the unequal distribution. Of course he intended to devise his whole estate, everything of which he could dispose, but not such property as this insurance, over which he thought he had no control.

I would say testator died intestate as to the insurance, and allow his children to share equally in its distribution. The decree of the court below should be reversed.

Mr. Justice MAXEY joins in this dissent.