## Bagley's Estate

*Eben H. Pennell,* for accountant.
*John A. Minnich,* for exceptants.

WRIGHT, P. J., August 23, 1943.—This matter comes before the orphans' court upon exceptions to the auditor's supplemental report. Rebecca Pearl Bagley died testate on March 24, 1942. In her original will dated December 14, 1936, testatrix divided the major portion of her estate among six named nephews and nieces. By a codicil dated March 17, 1942, testatrix provided, inter alia, as follows:

"At the present time my two Nephews, James Weisenborn and Harold Weisenborn of Elm Grove, West Virginia are in the millitery [sic] service of the United States of America and at the death of either one or both of them the share of such deceased one or the share of both of them shall be paid to my four or five Nephews and Nieces as provided for in item three of my will".

A dispute as to the proper construction of the quoted language gives rise to the present controversy. Evidence was produced before the auditor to show that Harold Weisenborn died in military service prior to the audit but after the death of testatrix. James Weisenborn is still in military service. The auditor held, as contended by counsel for the executors, that the shares of James and Harold Weisenborn were life estates. He ruled that the share of Harold Weisenborn, deceased, should be presently distributed among the other five legatees; and that the original share of James Weisenborn, together with his one-fifth portion of Harold's share, should be held in trust for James for life, the income to be paid to him during his lifetime and the principal to be distributed at his ultimate death.

Counsel for exceptants asserts two propositions: First, that the devise of an absolute fee cannot be subsequently reduced unless the intention to do so is clear, citing Heck's Estate, 170 Pa. 232, and Jackson's Estate, 179 Pa. 77; second, that the word "death" presumptively means death before testatrix, citing Keating et al. v. McAdoo, 180 Pa. 5, and Flick et al. v. The Forrest Oil Co., 188 Pa. 317. According to this second contention, we are in effect asked to write into the clause in question the words "before I die", so that it would read: "at the death of either one or both of them before I die."

In construing a will the primary aim of the court should be to ascertain and give full effect to the intention of the testator as it appears from the four corners of the will, and that construction must be adopted which, if possible, will render every word of the will operative: Brennan's Estate, 324 Pa. 410. It is a fundamental rule applied in the construction of wills that the intent of the testator shall be determined from an examination of the very words of the will taken as a part of an entire work and in the light of the circumstances under which it was written: Smith's Petition, 291 Pa. 129.

The first proposition advanced by counsel for exceptants is well recognized (see Cross et al. v. Miller, 290 Pa. 213, and Goodin's Estate, 328 Pa. 548), but we do not feel that it applies in this case. Where words sufficient to vest an absolute estate are used in a will, such interest may nevertheless be cut down by a subsequent provision if the testator indicates a clear intent to reduce the estate previously given, or if the subsequent language and the will as a whole indicate that the prior estate was not intended to be absolute: Byrne's Estate, 320 Pa. 513. It should also be kept in mind that the controversial clause does not appear in the original will but in the codicil. While a will and a codicil must be construed together as one instrument,

where there is any conflict the codicil must prevail: Foster's Estate, 324 Pa. 39; Elkins' Estate, 339 Pa. 193. To apply the legal proposition contended for would be to render the clause in the codicil idle and nugatory.

Coming to the second proposition, it is also well settled in Pennsylvania that the period of survivorship is to be taken as the death of the testatrix, unless a contrary intent is apparent: Shallcross' Estate, 200 Pa. 122. Counsel for exceptants relies especially upon Weister v. Young, 265 Pa. 393, and has furnished us with a copy of the opinion of the lower court in that case, affirmed per curiam.

We have concluded, however, that this second proposition does not apply in the present case. First, when testatrix executed the codicil she was on her deathbed. Presumably she expected to die soon, and she did die within a week. We feel that this is a circumstance which should be considered: see Green's Estate, 140 Pa. 253, Lerch's Estate, 309 Pa. 23, and Dobbin's Estate, 148 Pa. Superior Ct. 177. Second, testatrix used the words "at the present time my two nephews . . . are in the millitery [sic] service". These words must mean something, and if we apply the legal presumption contended for, we give no effect to them whatever. Third, we believe that the words "at the death" are more comparable to "when death occurs" than to "if death occurs": see Holmes v. Stanhope, 217 Pa. 63. The word "at", when used to refer to an event certain to happen, ordinarily refers to that event whenever it shall happen: Calder's Estate, 343 Pa. 30, and see Hanna's Estate, 344 Pa. 548. When she executed the codicil, testatrix must surely have felt that her nephews' present military service might continue after her death.

On the other hand, we cannot agree with the auditor that testatrix intended to set up life estates. We recognize that it is a well-settled rule of construction,

as contended by counsel for the executors, that a limitation over after the death of the first devisee is evidence of an intention that the devisee of the prior estate in order of enjoyment was intended to have not more than a life estate: Haydon's Estate, 334 Pa. 403. Yet we feel that this legal proposition does not apply to the particular language in the codicil. Mere technical rules of construction must give way to the plainly-expressed intention of the testator: Rzedzianowski's Estate, 148 Pa. Superior Ct. 361. A fee, like other estates, may be made defeasible upon certain conditions: Gohn's Estate, 324 Pa. 177. It seems clear that testatrix had no intention to limit the estates of Harold and James Weisenborn beyond their military service. The fact that they were in such service was apparently the sole reason for employing the disputed language. Had it not been for that fact, testatrix would presumably have allowed their absolute estates to stand as provided in the original will. Furthermore, earlier in the codicil, testatrix carefully sets up a life trust for the share of the nephew, John K. Davidson, and provides that the income therefrom should be paid to him during his lifetime and that, upon his death, the trustee should pay the principal in equal shares to the other five nephews and nieces, specifically including James and Harold Weisenborn. The fact that testatrix did not set up similar life trusts for James and Harold Weisenborn clearly indicates that she did not intend them to have mere life estates. This conclusion is supported by the fact that testatrix specifically mentions James and Harold Weisenborn as outright remaindermen after the death of John K. Davidson. Lastly, when testatrix says "at the death of either one or both of them the share of such deceased one or the share of both of them shall be paid to my four or five nephews and nieces as provided for in item three of my will", she indicates that one may survive the war and the other may not, in which event the survivor is to have

his portion of the deceased's share outright. It would be inconsistent to decree a life estate in the one-sixth share and an outright estate in the one thirtieth.

In short, we are unable completely to agree with the position of either counsel. An exhaustive review of the decisions leads us to the frank conclusion that will cases may be found to support almost any given proposition of construction; but that, in the final analysis, each will stands on its own feet and is construed according to the court's view of the testator's actual meaning. When this codicil was written, testatrix had in mind the possibility of the death of either James or Harold Weisenborn, or both, while they were in military service. Examining the words used as part of the whole, and giving effect to all of them in the light of the particular circumstances, it is our conscientious opinion that the language in question can be properly construed only by placing therein the words "in such service" so that it will read as though written: "at the death of either one or both of them in such service". When testatrix used the word "death" she did not mean death before she died, as contended on the one hand; nor did she mean eventual or ultimate death, as contended on the other hand. What she did mean was death while in the military service, whether before or after her death.

Our conclusion is that the auditor was correct in his distribution of the share of Harold Weisenborn but was incorrect in setting up the life trust for James Weisenborn. We propose to direct that distribution of the share of James Weisenborn, including his one-fifth portion of Harold's share, be withheld until he is discharged from his present military service or until he dies in such service. In the latter event, his share is to be distributed to the four remaining legatees. In the former event, it is to be distributed to James Weisenborn outright. Hence, the following

*Decree*

Now, to wit, August 23, 1943, the exceptions to the supplemental auditor's report are sustained, insofar as they relate to the distribution of the share of James Weisenborn, including his one-fifth portion of the share of Harold Weisenborn. In all other respects the auditor's supplemental report is confirmed absolutely. The share of James Weisenborn is to be withheld for subsequent distribution in accordance with the foregoing opinion.