## Moul Estate

*Bulleit and Bulleit*, for accountant.

SHEELY, P. J., June 3, 1950.—Testator, after making certain specific bequests, directed his executor to convert all of his remaining property into cash and then directed:

". . . he shall then divide it into seven equal shares, the same to be given to my seven children share and

share alike, viz.: Minnie, Nettie, Charles, Nora, Paul, Annie, and Lottie. *PROVIDING*, however, that the one-seventh share bequest unto my daughter, Minnie, married to Frank Strausbaugh, shall at her death revert onto her children."

The question before the court on the distribution of the balance in the hands of the executor is whether, under this provision of the will, the daughter, Minnie Strausbaugh, is limited to a life estate in her share of the residue, or whether she is entitled to her share outright.

If the proviso be eliminated, each of the seven children, including Minnie, would take one seventh of the residue absolutely. The question presented is whether the proviso reduced the estate given to Minnie to a life estate or whether it was an attempt on the part of testator to control the distribution of Minnie's estate at the time of her death. In Good et al. v. Fichthorn et al., 144 Pa. 287, 292 (1890) the court said:

"The true test of the effect of language apparently at variance with other parts of the devise, is whether the intent is to give a smaller estate than the meaning of the words of the gift standing alone would import, or to impose restraints upon the estate given. The former is always lawful and effective, the latter rarely, if ever; the first, because the testator's intention is the governing consideration in the construction and carrying out of a will; the second, because even a clear intention of the testator cannot be permitted to contravene the settled rules of law by depriving any estate of its essential legal attributes."

"The fundamental objective, of course, in the construction of wills is to give full effect to the testator's intention, in so far as that intention may be ascertained. Accordingly, where it appears that the controlling intention is to give an absolute estate, language

inconsistent therewith must be held ineffective. . . . Where, however, a reading of the whole will shows a controlling intention to give a less estate, with a gift over, that intention must be given effect": Byrne's Estate, 320 Pa. 513, 521 (1935).

It is difficult to determine the controlling intention of testator in this case and a strong argument can be made in favor of the theory that he intended to give his daughter a life estate with remainder to her children or in favor of the theory that he intended to give her an absolute estate and at the same time control the disposition thereof at her death. In favor of the first theory would be such cases as Keefer Estate, 353 Pa. 281 (1946); Kern's Estate, 296 Pa. 348 (1929), and Reiff v. Pepo, 290 Pa. 508 (1927). In the latter two cases it is held that the office of a proviso is to qualify, restrain or otherwise modify the general language of a principal clause, and that the proviso must be read as qualifying the principal provision, or the gift itself. But when this rule is applied in the instant case we have a gift to the daughter qualified by a provision as to the disposition of the gift on her death with the question unanswered as to whether testator intended her to take a life estate or intended her to take an absolute estate with the disposition thereof at her death restricted. In favor of the latter theory would be such cases as Billmyer et al. v. Billmyer, 296 Pa. 31 (1929) where a very definite provision as to the disposition of the estate upon the death of the wife was held to be an ineffective attempt to cut down an absolute estate previously given. See also Gohn's Estate, 324 Pa. 177 (1936); Cross et al. v. Miller, 290 Pa. 213 (1927). The apparent discrepancy in the cases is not a discrepancy in the rules to be applied but is an illustration of the oft-repeated statement that precedents are of little aid in construing a will since each case stands on its own facts and the determining factor always is the intention of testator.

It is quite apparent that testator's primary intention was to treat his children equally. This he accomplished by dividing his estate into seven equal shares and giving one share to each child. A secondary intention seems to be that Frank Strausbaugh, husband of Minnie, should not benefit by the bequest to her. Nothing is said concerning the status of the estate during her lifetime; no trust is created to protect it, and there is no specific language stating that she is to take only a life estate. The only provision is that at her death the bequest shall "revert" to her children. The inference is that testator was not concerned with the bequest during her lifetime, but merely wanted to restrict the disposition of it at her death; that he trusted her to withstand the importunities of her husband but was concerned with a possible legal claim of her husband after her death. This theory is supported by the fact that he wanted to treat his children equally, but if the other six children took an absolute estate and Minnie took only a life estate, or the income from her share, they would not be treated equally.

The theory is further supported by testator's use of the expression that the estate shall "revert" to the children. He does not, in so many words, make a gift of the remainder after a life estate from himself to his grandchildren, but provides that the gift he has made to his daughter shall "revert" to her children. Of course, this was not necessary, as any phraseology which, from its context and the will as a whole, shows an intention to make the gift is sufficient for the purpose: Smith's Petition, 291 Pa. 129, 138 (1927). However, the legal signification of the word "revert" is for property to go back to and lodge in a former owner who parted with it by creating an estate in another. Here the property could not go back to testator and the word "revert" would have to be construed to mean "go to": Sheldrake's Estate, 308

Pa. 542, 547 (1932) ; Smith's Petition, 291 Pa. 129 (1927). But the word would still convey the thought of an estate created in the daughter from whom it would "revert".

Considering the entire will we conclude that testator intended his daughter, Minnie, to take an absolute interest in her share of his estate and merely intended to control the disposition of it after her death. This he could not do and consequently the share must be awarded to Minnie absolutely. It is not to be overlooked that her two children, both of whom are sui juris, have not appeared to assert any claim to the estate and therefore apparently acquiesced in the proposed distribution of their mother's share to her absolutely.

And now, June 3, 1950, the account of the executor is confirmed and the proposed schedule of distribution as filed is approved and distribution is directed in accordance therewith.